91 Cal.Rptr.2d 752 (2000)
77 Cal.App.4th 422
Jack SPORICH, Petitioner,
v.
The SUPERIOR COURT of Ventura County, Respondent;
The People, Real Party in Interest.
No. B135605.
Court of Appeal, Second District, Division Six.
January 5, 2000.
Review Denied March 29, 2000.[*]
*753 Charles L. Cassy, Ventura, for Petitioner.
No appearance for Respondent.
Michael D. Bradbury, District Attorney, County of Ventura, David Lehr, Deputy District Attorney, for Real Party in Interest.

OPINION AND ORDER
YEGAN, J.
The Sexually Violent Predators Act (SVP) (Welf. & Ins.Code, § 6600, et seq.) has no provision for discovery.[1] If the 1986 Civil Discovery Act has application in SVP proceedings, here there was no good cause for the trial court to order additional psychiatric interviews
Jack Sporich, a recidivist child molester, was about to be released from state prison in 1996 when the Director of Corrections determined that he might be a sexually violent predator within the meaning of the newly enacted statutory scheme. Two *754 psychological evaluations were conducted in late 1996 and based thereon, the Ventura County District Attorney filed a SVP petition. Respondent court found that there was probable cause for the civil commitment and the matter was set for a jury trial.
Trial was continued several times at petitioner's request while the constitutionality of the SVP Act was pending in other courts. The California Supreme Court upheld the statutory scheme in Hubbart v. Superior Court (1999) 19 Cal.4th 1138, 81 Cal.Rptr.2d 492, 969 P.2d 584.
With a trial date imminent, the district attorney feared that the psychological evaluations of petitioner were no longer current. He moved respondent court to compel further mental examinations arguing that both SVP laws and the Code of Civil Procedure authorized further examinations. The fair import of the motion was a request for an order directing petitioner to submit to further psychiatric interviews. The evidence in support of this motion was a terse declaration by a deputy district attorney to the effect that petitioner had refused to submit to further mental examinations.
Respondent court, ruling that the SVP statutory scheme contemplates annual evaluations, granted the motion to conduct further psychological examinations. It expressly found, as a matter of overall fairness to the People, that the SVP Act impliedly allowed for additional mental examinations to make them current. The court's minute order directs petitioner "to submit to a psychiatric interview by Department of Mental Health doctors ... for the purpose of preparation of updated reports for use at trial in this matter."
Petitioner sought relief by way of extraordinary writ. We determined that petitioner lacked an adequate remedy at law and that the discovery dispute presented first impression issues of state-wide interest. "We use prerogative writs in discovery matters only to review questions that are of general importance to the trial courts and the profession, and when broad principles can be enunciated to guide the courts in future cases. (Citations.)" (Vinson v. Superior Court (1987) 43 Cal.3d 833, 838, 239 Cal.Rptr. 292, 740 P.2d 404.)

Mental Examinations Under the SVP Law
The object of the SVP Act "is to identify individuals who have certain diagnosed mental disorders which make them likely to engage in acts of sexual violence and to confine them for treatment of `their disorders only as long as the disorders persist and not for any punitive purposes.' (Stats. 1995, ch. 763, § 1.)" (In re Parker (1998) 60 Cal.App.4th 1453, 1466, 71 Cal. Rptr.2d 167.) The SVP law requires that the state prove beyond a reasonable doubt that the suspected SVP suffers from "a currently diagnosed mental disorder" which predisposes him to "engage in sexually violent criminal behavior." (§ 6600, subd. (a), emphasis added; Hubbart v. Superior Court (1999) 19 Cal.4th 1138, 1158, 81 Cal.Rptr.2d 492, 969 P.2d 584.)
Welfare and Institutions Code circumscribes, in detail, the number and timing of psychological examinations. The suspected SVP is to be examined by two practicing psychiatrists or psychologists. (§ 6601, subds. (c) and (d); Hubbart v. Superior Court, supra, 19 Cal.4th at p. 1146, 81 Cal.Rptr.2d 492, 969 P.2d 584.) Prior to the examination, the suspected SVP is notified of the SVP evaluation and is asked if he or she consents to an interview. (See post, appen. A, 4th par., p. 757.) If there is disagreement in the two evaluations, "two independent professionals" are selected and "further examination" of the suspected SVP occurs. (§ 6601, subd. (e).)
These examinations are then reviewed by the district attorney to determine whether to file an SVP petition. (§ 6601, subd. (i).) Significantly, there is no mention in Welfare and Institutions Code authorizing further precommitment mental examinations.
*755 After actual SVP commitment, "[v]arious provisions seek to ensure that any commitment ordered under section 6604 does not continue in the event the SVP's condition materially improves. To this end, annual mental examinations are required. The SVP may request appointment of an expert to perform the examination, and relevant records must be made available for this purpose. (§ 6605, subd. (a).)" (Hubbart v. Superior Court, supra, 19 Cal.4th at p. 1147, 81 Cal.Rptr.2d 492, 969 P.2d 584.)
The district attorney and respondent court have erroneously seized upon the section 6605, subdivision (a) requirement as being supportive of the claim that the statutory scheme permits annual examinations before SVP commitment. This is a misreading of the statutory scheme which gives little, if any, value to the fundamental nature of the interest at stake.
Unauthorized attempts by the state to conduct a probe of the deep-seated workings of a suspected SVP's psyche necessarily implicates the constitutional right of privacy. (Cal. Const., art. I, § 1; Scull v. Superior Court (1988) 206 Cal.App.3d 784, 790, 254 Cal.Rptr. 24 ["all persons have an inalienable right to privacy"].) "If there is a quintessential zone of human privacy it is the mind. Our ability to exclude others from our mental processes is intrinsic to the human personality. [Fn. omitted.]" (Long Beach City Employees Assn. v. City of Long Beach (1986) 41 Cal.3d 937, 944, 227 Cal.Rptr. 90, 719 P.2d 660.)
The constitutional right of privacy provides a backdrop against which any contemplated state intrusion must be measured. (E.g., see Laurie S. v. Superior Court (1994) 26 Cal.App.4th 195, 202, 31 Cal.Rptr.2d 506.) Our Supreme Court has said that involuntary civil commitment statutes are subject to the most rigorous form of constitutional review. (Conservatorship of Hofferber (1980) 28 Cal.3d 161, 171, 167 Cal.Rptr. 854, 616 P.2d 836; People v. Saffell (1979) 25 Cal.3d 223, 232-233, 157 Cal.Rptr. 897, 599 P.2d 92.)
As wisely stated by Mr. Justice Cardozo: "We do not pause to consider whether a statute differently conceived and framed would yield results more Consonant with fairness and reason. We take the statute as we find it." (Anderson v. Wilson (1933) 289 U.S. 20, 27, 53 S.Ct. 417, 420, 77 L.Ed. 1004, 1010.) In the criminal law context, we have said that trial courts must "not attempt to embroider the discovery statute to provide greater discovery rights" than are circumscribed. (Hubbard v. Superior Court (1997) 66 Cal.App.4th 1163, 1169, 78 Cal. Rptr.2d 819.) In the civil law context the trial courts similarly lack the power to embroider the statutes to provide greater discovery beyond those afforded by statute. (Bailey v. Superior Court (1977) 19 Cal.3d 970, 140 Cal.Rptr. 669, 568 P.2d 394; Edmiston v. Superior Court (1978) 22 Cal.3d 699, 704, 150 Cal.Rptr. 276, 586 P.2d 590; Ramirez v. MacAdam (1993) 13 Cal.App.4th 1638, 1641, 16 Cal.Rptr.2d 911.) These teachings are equally compelling in civil matters that may result in involuntary commitment for life. (Hubbart v. Superior Court, supra, 19 Cal.4th at p. 1153, fn. 20, 81 Cal.Rptr.2d 492, 969 P.2d 584.)
An order for additional precommitment mental examinations to establish currency is simply not authorized by the SVP Act. The pertinent language of the SVP enactment is unambiguous. With the exception of certain circumstances not present here (see ante, p. 754), Welfare & Institutions Code allows the state to conduct two precommitment mental examinationsno more, and no less.

Mental Examinations Under the Code of Civil Procedure
SVP proceedings are deemed civil in nature. (Hubbart v. Superior Court, supra, 19 Cal.4th at p. 1144, 81 Cal. Rptr.2d 492, 969 P.2d 584.) Therefore, the district attorney argues that requests for current mental examination should be governed *756 by the 1986 Civil Discovery Act. (Code Civ. Proc. §§ 2016 et seq.)[2]
Assuming that the 1986 Civil Discovery Act has application in the SVP context, Code of Civil Procedure section 2032, subdivision (d) requires a good cause requirement to conduct a mental examination. Vinson v. Superior Court, supra, 43 Cal.3d at p. 840, 239 Cal.Rptr. 292, 740 P.2d 404.) "[T]he good cause which must be shown should be such that will satisfy an impartial tribunal that the request may be granted without abuse of the inherent rights of the adversary." (Greyhound Corp. v. Superior Court (1961) 56 Cal.2d 355, 388, 15 Cal.Rptr. 90, 364 P.2d 266, emphasis added.)
Section 2032 does not limit the number of examinations (Shapira v. Superior Court (1990) 224 Cal.App.3d 1249, 1254-1255, 274 Cal.Rptr. 516) but cumulative discovery is prohibited. (Code Civ. Proc. § 2019(b)(1); Irvington-Moore, Inc. v. Superior Court (1993) 14 Cal. App.4th 733, 738, 18 Cal.Rptr.2d 49.) "[M]ultiple [mental] examinations should not be ordered routinely...." (Shapira v. Superior Court, supra, 224 Cal.App.3d at p. 1255, 274 Cal.Rptr. 516.)
The concept of good cause serves as a barrier to excessive and unwarranted intrusions. (Greyhound Corp. v. Superior Court, supra, 56 Cal.2d at p. 388, 15 Cal. Rptr. 90, 364 P.2d 266; Kees v. Medical Board (1992) 7 Cal.App.4th 1801, 1815;, 10 Cal.Rptr.2d 1121 Hogan, Modern California Discovery (4th ed.1988) at p. 471.)
Good cause is established by facts that "`appear in the record as a demonstrable reality.'" (People v. Gates (1987) 43 Cal.3d 1168, 1199, 240 Cal.Rptr. 666, 743 P.2d 301.) Mere speculation, standing alone, will not suffice. (Mendez v. Superior Court (1988) 206 Cal.App.3d 557, 571, 253 Cal.Rptr. 731.) Here, petitioner has undergone two mental examinations. Additional psychiatric interviews impinge on petitioner's constitutional right of privacy.
The district attorney has opined that further mental examinations are necessary. The passage of time does not, of itself, translate into good cause for further mental examinations. (Kees v. Medical Board supra, 7 Cal.App.4th at p. 1815, 10 Cal.Rptr.2d 112.) There was no showing whatsoever that petitioner's mental status had changed at all. The district attorney's claim that the department of mental health "has taken the position that their evaluations must be less than one year old to be `current'" does not automatically trigger a finding of good cause. The district attorney was required to come forward with compelling proof of good cause. He did not do so. The trial court abused its discretion as a matter of law when it ordered petitioner to undergo further psychiatrist interviews as a matter of overall fairness to the People.[3]

Conclusion
Let a writ of mandate issue commanding respondent court to set aside its order requiring further psychiatric interviews of petitioner, and to enter a new order denying the motion. The order to show cause and the stay of proceedings, having accomplished their purposes, are dissolved.
GILBERT, P.J., and COFFEE, J., concur.
*757 
NOTES
[*] Chin, J., and Brown, J., dissented.
[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.
[2] As previously indicated, the Legislature has made no express provision for discovery in SVP proceedings. (Cf. Pen.Code § 2966, subd. (b) [mentally disordered offender proceedings].) The only references to discovery are that the suspected SVP shall "have access to all relevant medical and psychological records and reports" (§ 6603, subd. (a)) and that the district attorney shall be given the evaluation reports and any other supporting documents. (§ 6601, subds.(c), (h).) The Legislature has not specifically given any authority to the trial courts to order psychiatric interviews.
[3] There is, of course, no impediment to the two psychologists testifying at trial that the suspected SVP is then currently an SVP.

Even if a suspected SVP is ordered to submit to further psychiatric interview upon a showing of good cause, he cannot realistically be compelled to give a further interview. (See Hubbart v. Superior Court (1999) 19 Cal.4th 1138, 1149, fn. 16, 81 Cal.Rptr.2d 492, 969 P.2d 584; see also post, appen. A [Notification of Evaluation as a Sexually Violent Predator, paragraph four].)