[No. S085899. June 4, 2001.]

CLARENCE ALBERTSON, Petitioner, v.
THE SUPERIOR COURT OF VENTURA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Kenneth Claman, Public Defender, Michael C. McMahon, Chief Deputy Public Defender, and Todd W. Howeth, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Michael D. Bradbury, District Attorney, Gregory D. Totten, Chief Assistant District Attorney, Michelle J. Contois and David M. Lehr, Deputy District Attorneys, for Real Party in Interest.

## OPINION

GEORGE, C. J.—Petitioner Clarence Albertson faces trial under the Sexually Violent Predators Act (Welf. & Inst. Code, §§ 6600-6609.3 (SVPA or Act)).[1] In preparation for that trial, the Ventura County District Attorney sought an order directing petitioner to undergo an updated mental health interview and evaluation, and granting the district attorney access to petitioner's mental health treatment files. The trial court granted the district attorney's requests, but the Court of Appeal reversed, holding that there was no statutory authorization for updated interviews and evaluations, and that the district attorney had no right of access to petitioner's treatment records.

After we granted review to determine whether the district attorney was entitled to updated interviews and evaluations and access to treatment information, the Legislature enacted, and the Governor signed, urgency legislation amending a key provision of the SVPA, section 6603, subdivision (c) (section 6603(c)). As explained below, we conclude that this legislation applies to this case and authorizes updated interviews and evaluations, as well as access to treatment records. In light of the new enactment, we shall vacate the judgment of the Court of Appeal and remand the matter to that court for further proceedings consistent with this opinion.

### I.

In 1986, petitioner entered a guilty plea to rape and admitted an allegation that he had suffered two prior similar convictions. He was sentenced to prison, served 11 years, and was scheduled for release on parole in September 1998. Prior to his release, and pursuant to the provisions of the SVPA, the Department of Corrections reviewed petitioner's background and criminal record and determined that petitioner was likely to be a sexually violent predator (SVP). (§ 6601, subd. (b).) Accordingly, the Department of Corrections referred petitioner's case to the Department of Mental Health for a "full evaluation" concerning whether petitioner met the criteria for civil commitment and treatment under the SVPA. (*Ibid.*; see generally *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1143-1149 [81 Cal.Rptr.2d 492, 969 P.2d 584] [describing Act] (*Hubbart*).)

As we explained in *Hubbart, supra*, 19 Cal.4th at page 1146, "[t]he evaluation performed by the Department of Mental Health must be conducted by at least two practicing psychiatrists or psychologists in accordance with a standardized assessment protocol. (§ 6601, subds. (c) & (d).) . . . [¶

---

[1]All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

Two evaluators must agree that the inmate is mentally disordered and dangerous within the meaning of section 6600 in order for proceedings to go forward under the Act. (§ 6601, subd. (d).)"

In April and May of 1998, the two independent experts selected by the Department of Mental Health, Drs. Korpi and Hupka, conducted interviews and evaluations of petitioner while he was housed in prison. Petitioner asserts that he was informed that the interviews by these doctors did not constitute treatment, and that therefore the interviews were presumptively not confidential. The experts' evaluations concluded that petitioner met the statutory requirements for commitment as a SVP—that is, he was likely to reoffend in a sexually violent manner if released without proper treatment. (§ 6601, subd. (d).) Accordingly, the Department of Mental Health transmitted a request for a petition for commitment, accompanied by the two independent mental health experts' evaluations and other supporting documents, to the county in which petitioner last was convicted. (*Id.*, subds. (d), (h), & (*i*).) That county's "designated counsel" (*id.*, subd. (*i*))—in this case, the Ventura County District Attorney (hereafter the district attorney)— reviewed the evaluations and other supporting documents, concurred in the evaluators' recommendation, and hence, pursuant to statutory directive (*ibid.*), in August 1998 filed a petition in the superior court for commitment under the SVPA. Petitioner was retained in custody, and thereafter, at petitioner's request, the matter was continued twice, in September and October 1998.

In mid-November 1998 the superior court held a hearing under the SVPA to determine whether there was probable cause to believe that petitioner was likely to engage in sexually violent predatory behavior upon release from the jurisdiction of the Department of Corrections. (§ 6602, subd. (a).) The mental health expert evaluators, Drs. Korpi and Hupka, testified, each diagnosing petitioner with "Paraphilia, Not Otherwise Specified, with Non-Consenting Persons" and as suffering from "Antisocial Personality." The superior court found probable cause to believe that petitioner is a SVP, and ordered that a trial be set to determine whether petitioner is in fact a SVP as defined in section 6600.

Because under the Act an alleged predator must be housed in a "secure facility" between the time probable cause is found and the time trial is completed (§ 6602, subd. (a)), petitioner was moved to Atascadero State Hospital (Atascadero). (See § 6600.05, subd. (a).) Thereafter, the case was continued at petitioner's request four more times while this court resolved constitutional challenges to the Act in *Hubbart, supra,* 19 Cal.4th 1138. Petitioner has been confined in Atascadero since December 1998 and has

voluntarily received treatment at that facility pending his trial, but during this more than two-year pretrial period, no new mental evaluations (as described in section 6601, subdivisions (c) and (d)) have been performed.

In mid-September 1999—nearly a year and a half after completion of the original interviews and evaluations by the two independent mental health experts—the trial court held hearings on the district attorney's motion, filed earlier that month, seeking an order requiring petitioner to submit to updated interviews for the purpose of updated evaluations. The district attorney stressed the SVPA's requirement of "evidence of a *currently* diagnosed mental disorder" (§ 6600, subd. (a)(3)), explaining: "[I]n order to get the best diagnosis of someone's mental condition, [the mental health evaluator needs] to speak to that person. We want the best information going to the jury because to ask the jury to commit somebody as a sexually violent predator based on an evaluation that's two plus years old or a year or more old is not the best information we can give to the jury. Unlike criminal cases or most civil cases where the facts are the facts and they don't change over time, mental condition can." The district attorney asked the court to order updated interviews of petitioner and updated mental evaluations for use at trial, pursuant to Code of Civil Procedure section 2032, subdivision (a).[2] In addition, the district attorney served a subpoena duces tecum on the Atascadero facility to obtain access to records of petitioner's mental health treatment undertaken after he was moved there pending trial. Petitioner opposed the request for additional interviews and asserted that the court lacked authority to compel him to participate in such examinations. With respect to the request for his mental health treatment records, petitioner asserted that such records are confidential under section 5328,[3] and that the SVPA did not authorize release of those treatment records.

At the conclusion of the hearings, the trial court, citing and relying upon the SVPA's requirement that the fact finder must determine beyond a

---

[2]Under that provision a court may, for good cause, order a "mental examination."

[3]Section 5328, enacted in 1972, provides in relevant part: "All information and records obtained in the course of providing services under Division 4 (commencing with Section 4000), Division 4.1 (commencing with Section 4400), Division 4.5 (commencing with Section 4500), Division 5 (commencing with Section 5000), *Division 6 (commencing with Section 6000),* or Division 7 (commencing with Section 7100), to either voluntary or involuntary recipients of services shall be confidential. Information and records obtained in the course of providing similar services to either voluntary or involuntary recipients prior to 1969 shall also be confidential." (Italics added.) After providing this basic framework, section 5328 sets out 21 specific exceptions to the general rule of confidentiality regarding information and records obtained in the course of providing services. (*Id.*, subds. (a)-(u).) (The SVPA, sections 6600-6609.3, was added to Division 6 in 1995.)

reasonable doubt that a *current* disorder exists (see § 6600, subd. (a)(3)),[4] granted the district attorney's request to compel petitioner to submit to updated interviews by the independent evaluators, found that the district attorney was entitled to access to the records of the treatment undertaken by petitioner during the intervening months at Atascadero, and held that the confidentiality provision of section 5328 was inapplicable.[5] On application of petitioner, the Court of Appeal issued an alternative writ of mandate directing the superior court to set aside its orders or show cause why a peremptory writ of mandate should not issue. Thereafter, by opinion, the appellate court issued a writ of mandate ordering the superior court to deny the district attorney's requests.

The Court of Appeal, relying upon its own decision in *Sporich v. Superior Court* (2000) 77 Cal.App.4th 422 [91 Cal.Rptr.2d 752] (*Sporich*), decided the same day as the appellate court's decision in the present case, held that the SVPA did not authorize the county to compel petitioner to submit to additional interviews designed to update the earlier evaluations, and also held that the Act did not grant the district attorney access to petitioner's treatment records. The appellate court further agreed with petitioner that the superior court's order affording the county access to the Atascadero treatment records violated the confidentiality provisions of section 5328. We granted review to consider the validity of the conclusions reached by the Court of Appeal.

## II.

The SVPA reflects the Legislature's determination of the importance of identifying and controlling persons whose criminal history and mental state render them sexually violent predators. Only persons who (i) have committed sexually violent crimes against multiple victims, and (ii) suffer from a *"currently* diagnosed mental disorder" that "makes" them "a danger to the health and safety of others in that it is likely" they will engage in future acts

---

[4] Section 6600, subdivision (a), provides: "Jurors shall be admonished that they may not find a person a sexually violent predator based on prior offenses absent relevant evidence of a currently diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior."

[5] With regard to the application of section 5328, the trial court stated: "My ruling here is that [section] 5328 does not apply in this situation. The . . . [SVPA] is a more specific statute that contemplates proceedings where factual evidence is needed as opposed to many other imaginable scenarios where somebody might want mental health records from the state. [¶] . . . [T]his is a civil matter in which there should be equal access to the facts for both sides . . . . I think that the [district attorney] should be able to have [access to the treatment records] and I think that the act is written under the assumption that [the district attorney] will [have such access]. It would be the reason that it's not specifically provided for. That's how I view that."

of sexually violent criminal behavior, fall under the provisions of this Act. (§ 6600, subd. (a)(3), italics added.)[6]

■  In upholding the constitutionality of the SVPA against various challenges, we repeatedly stressed in *Hubbart, supra*, 19 Cal.4th 1138, that in order for a person to be civilly committed for treatment under this legislation, the government must establish beyond a reasonable doubt that the person suffers from a " '*current*' mental disorder" that makes him or her *presently* dangerous and likely to reoffend in the future. (*Id.*, at p. 1169 and *passim*, italics added; see also *id.*, at pp. 1161-1162.) The district attorney has an interest in obtaining information concerning the individual's current mental state for two reasons: to avoid committing a person who does not currently suffer from a qualifying mental disorder, and to support the commitment of a person who does suffer from a qualifying mental disorder.

The SVPA also sheds light on what the Legislature considers to be "current" for purposes of the Act. Section 6605, subdivision (a), requires that each person actually committed as an SVP undergo a *"current* examination of his or her mental condition . . . at least once every year." (Italics added.) This suggests the Legislature's recognition that diagnoses can change in light of treatment, severity of mental disorder, changed circumstances, and the passage of time. As observed in *Butler v. Superior Court* (2000) 78 Cal.App.4th 1171, 1180 [93 Cal.Rptr.2d 468], evaluations like those of Drs. Korpi and Hupka "performed at the initial commitment stage would not reflect the [petitioner's] current medical condition" at a subsequent stage, well more than a year later. (Accord, *Peters v. Superior Court* (2000) 79 Cal.App.4th 845, 850 [94 Cal.Rptr.2d 350] ["the use of potentially stale reports subverts the manifest intent of the SVPA—the state must prove that the party suffers from a currently diagnosed mental disorder which predisposes him to engage in sexually violent criminal behavior"].)

In light of these provisions of the SVPA, it is evident why the district attorney in this matter, faced with an evaluation of petitioner that was more than one year old, considered it of vital importance to obtain a current evaluation, supported by a current interview and access to current treatment information, concerning petitioner's current mental condition. As suggested by the district attorney, a county seeking an SVPA commitment would be

---

[6]Pursuant to the Act, a person found beyond a reasonable doubt to be a sexually violent predator is committed for a treatment period not to exceed two years. After the initial period of treatment, the person can be recommitted for two-year intervals until he or she no longer poses a danger to the health and safety of others. (§§ 6600-6609.3.) A committed person may petition yearly for release and will be released if he or she is found no longer to meet the sexually violent predator criteria. (§§ 6605, 6607, 6608.)

placed in an untenable position were it precluded from obtaining access to information concerning an individual's current mental state. As observed *ante*, footnote 4, jurors in such cases are instructed that they may not find a person to be a SVP absent relevant evidence of a qualifying "currently diagnosed mental disorder." (§ 6600, subd. (a).) Pursuant to section 6603, subdivision (a), a person subject to commitment under the Act has a right to counsel and a right to retain experts or professionals to perform examinations on his or her behalf—and of course he or she also has a right to present the resulting evidence to the jury. Quite simply, a county seeking commitment needs information concerning an alleged SVP's current mental status in order to have a fair opportunity to satisfy its own statutory and constitutional burden in SVPA litigation.

The Court of Appeal did not dispute the district attorney's need for a more current evaluation of petitioner and access to current treatment information, but nonetheless concluded that the then existing statutory provisions did not authorize the relief sought by the district attorney and granted by the trial court.

█ We need not determine whether the Court of Appeal properly interpreted the statutory provisions as they read at the time that court rendered its opinion, because the issues presented by this case now are clearly controlled by the newly enacted amendments to the SVPA. As explained below, the new legislation applies to this proceeding, and under the current provisions it is clear that the district attorney is entitled both to have a new evaluation of petitioner conducted and to obtain access to petitioner's treatment records at Atascadero.

III.

Section 6603(c), effective September 13, 2000 (Stats. 2000, ch. 420, § 2), provides as follows: "If the attorney petitioning for commitment under this article determines that updated evaluations are necessary in order to properly present the case for commitment, the attorney may request the State Department of Mental Health to perform updated evaluations. If one or more of the original evaluators is no longer available to testify in court proceedings, the attorney petitioning for commitment under this article may request the State Department of Mental Health to perform replacement evaluations. When a request is made for an updated or replacement evaluation, the State Department of Mental Health shall perform the requested evaluations and forward them to the petitioning attorney. However, updated or replacement evaluations shall not be performed except as necessary to update one or more of the

original evaluations or to replace the evaluation of an evaluator that is no longer available for testimony. These updated or replacement evaluations shall include review of available medical and psychological records, including treatment records, consultation with current treating clinicians, and interviews of the person being evaluated, either voluntarily or by court order. If an updated or replacement evaluation results in a split opinion as to whether the subject meets the criteria for commitment, the State Department of Mental Health shall conduct two additional evaluations in accordance with subdivision (f) of Section 6601."

Petitioner cites and quotes this newly enacted section in his answer brief on the merits, in which he stresses that "[t]he county concedes that [it has] not sought and obtained an updated evaluation from the Department [of Mental Health] under the new amendment." In that same brief, petitioner implicitly acknowledges that the new statute applies to him, and that "[i]f an updated evaluation is performed [under newly enacted section 6603(c)] by the Department of Mental Health, the independent evaluators will have access to all the records necessary to perform the evaluation." Petitioner argues that "the decision of the Court of Appeal should be affirmed and the [district attorney] seeking commitment in this case should pursue his new statutory remedy." The district attorney, in his reply brief, asserts that the new legislation grants authority for new interviews, and asks that we clarify that mental health treatment records of a suspected SVP are not confidential under section 5328.

We conclude that the enactment of section 6603(c) renders it unnecessary for this court to decide whether the Court of Appeal below erred, because as both parties have expressly acknowledged, the new statute applies in any event to any future pretrial and/or trial proceedings in this litigation. (Cf. *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 299-300 [279 Cal.Rptr. 592, 807 P.2d 434] [legislation affecting conduct of criminal trials applies to pending cases].) Moreover, under the new legislation, it is clear that the district attorney has a right to the essence of what he has sought in this litigation.

## IV.

It is evident from its language and history that section 6603(c) was intended by the Legislature to address the issues raised in this litigation by clarifying the trial court's authority to order updated mental interviews and evaluations, as well as the district attorney's right of access to treatment information.

Section 6603(c) sets out express authority for the updated evaluations (which "shall include" court-ordered interviews of the petitioner) sought by the district attorney. This provision specifies that if the district attorney determines that new or replacement evaluations are necessary "to update one or more of the original evaluations or to replace the evaluation of an evaluator that is no longer available for testimony," the district attorney may request the State Department of Mental Health (Department) to perform such updated or replacement evaluations, and, upon such request, the Department "*shall* perform the requested evaluations" (§ 6603(c), italics added) and forward them to the district attorney.[7]

The new enactment also provides that "[t]hese updated or replacement evaluations shall include review of available medical and psychological records, including treatment records, consultation with current treating clinicians, and interviews of the person being evaluated . . . ." (§ 6603(c).) By this language, the current provision clarifies within the SVPA an exception to section 5328's general rule of confidentiality of treatment records, and allows the district attorney access to treatment record information, insofar as that information is contained in an updated evaluation. To the extent there might be any ambiguity in this regard, the history described below confirms that in an SVPA proceeding a local government's designated counsel (here, the district attorney) may obtain, through updated mental evaluations, otherwise confidential information concerning an alleged SVP's treatment.

The history of the new provision is as follows. In late February 2000, in apparent response to, among other things, the Court of Appeal's decisions in this case and in *Sporich, supra,* 77 Cal.App.4th 422, Senate Bill No. 2018 (1999-2000 Reg. Sess.) (Senate Bill 2018) was introduced by Senator Schiff. The bill proposed to amend section 6603 by adding a new subdivision (c), providing specific authority for obtaining updated evaluations in SVPA

---

[7]Petitioner asserts that under the new statute, "[t]he Director of the Department [of Mental Health] must . . . decide if an updated evaluation is necessary." The current provision, however, contemplates that the "attorney petitioning for commitment" will determine whether updated or replacement evaluations are necessary, and it defines the circumstances in which such evaluations shall be performed. The provision does not vest the Director of the Department of Mental Health with responsibility or authority to determine whether such updated evaluations are necessary.

Petitioner also asserts that, pursuant to *Sporich, supra,* 77 Cal.App.4th 422, "[t]he passage of time does not, of itself, translate into good cause for further mental evaluations" (*id.,* at p. 428), and he suggests that even after the enactment of section 6603(c), the district attorney must show something more than the mere passage of a year since the prior evaluation, in order to justify a updated evaluation. We do not agree. As noted above, courts have recognized that a person's mental status can change with time (and treatment), and it appears from the new provision that the Legislature envisions that the passage of one year between evaluations itself constitutes adequate justification for an updated evaluation.

cases, and also providing that such updated evaluations "shall include review of available medical and psychological records, including treatment records, consultation with current treating clinicians, and interviews of the person being evaluated . . . ." (Sen. Bill 2018, § 1, as introduced Feb. 25, 2000.) A subsequent bill analysis prepared for the Senate Health and Human Services Committee described the purpose of the bill: "According to the sponsor, S.B. 2018 is intended to enable the district attorney to obtain current mental health evaluations in order to facilitate court actions in the sexually violent predator commitment process. Occasionally, there is a substantial length of time between an evaluation of the person and the actual commitment hearing, sometimes resulting in either defense objections that the evaluations are outdated or one of the two evaluators becoming unavailable." (Sen. Com. on Health and Human Services, Analysis of Sen. Bill 2018, mem. prepared for hearing date of Apr. 5, 2000, pp. 3-4.) In April 2000, the Senate amended the bill in a respect not relevant here. A subsequent bill analysis prepared for the Senate Committee on Public Safety observed that the bill was triggered by and related to the Court of Appeal decision in *Sporich, supra,* 77 Cal.App.4th 422 (holding that updated evaluations are not authorized under the Act), and the Court of Appeal's underlying decision in the present case (holding that SVPA treatment records are confidential). (Sen. Com. on Public Safety, Analysis of Sen. Bill 2018, mem. prepared for hearing date of Apr. 25, 2000, pp. 6-8.) In the latter regard, the report asserted that "[g]enerally, records of treatment, including SVP records, are confidential. (Welf. & Inst. Code 5328.)" (*Id.,* at p. 7.) Finally, the report quoted objections of the American Civil Liberties Union (ACLU) to the bill: " '*We are concerned that the language of this bill would compromise the confidentiality of medical information between a patient and his or her doctor. . . .*' " (*Id.,* at p. 12, italics added.) Thereafter, despite the ACLU's concern, in May 2000 the Senate amended the bill only in a respect not relevant here.

A subsequent bill analysis prepared for the Assembly Committee on Public Safety outlined the background of the bill (including discussion of the Court of Appeal decision in *Sporich, supra,* 77 Cal.App.4th 422, and the underlying decision in the present case), set out then available statistics concerning the number and status of sexually violent predator cases,[8] and noted, without describing, the opposition of the ACLU and California

---

[8]The analysis reported that "[a]s of June 15, 1999: [¶] a) Approximately 27,000 inmates have been screened after the [California Department of Corrections] has determined that they may be eligible for commitment. [¶] b) 2,702 inmates have been referred to the [Department of Mental Health] for evaluation. [¶] c) 1,592 inmates have been found to meet the SVP clinical requirements by [the Department of Mental Health]. [¶] d) [The Department of Mental Health] petitioned to have 697 inmates civilly committed by the [county] district attorney. [¶] e) A judge has found probable cause to hold 331 [of those] inmates. [¶] f) Following a trial by jury, 35 [of those] inmates were released. [¶] g) As of June 1999, 117

Attorneys for Criminal Justice (CACJ). (Assem. Com. on Public Safety, Analysis of Sen. Bill 2018, mem. prepared for hearing date of June 13, 2000, pp. 1-8.) One week later, an expanded analysis prepared for the same Assembly committee provided an extensive discussion of the case law construing section 5328's confidentiality provision, and stated: "*As written, this bill does not provide protection of confidential medical and psychological treatment records and consultations. As such, Committee staff recommends this bill be amended to omit the language mandating the release of 'treatment records' and 'consultation with current treating clinicians' . . . .*" (Assem. Com. on Public Safety, Analysis of Sen. Bill 2018, mem. prepared for hearing date of June 20, 2000, p. 9, italics added.) The analysis also noted, without describing, the opposition of the ACLU, CACJ, and the California Public Defenders Association. (*Id.*, at p. 10.)

Thereafter, despite the recommendation of the staff of the Assembly Committee on Public Safety and the objections of the ACLU and the defense counsel associations, in June 2000 the Assembly left intact the bill's provisions calling for review of treatment records and for consultation with current treating clinicians, and amended the bill in a manner designed to further strengthen the right of local government attorneys to secure updated interviews and evaluations. (Sen. Bill 2018, § 2, as amended in Assembly, June 22, 2000, p. 5.)[9] The Assembly also amended the bill by declaring that "[t]his act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the [California] Constitution and shall go into immediate effect." (*Id.*, § 6, p. 7.)[10] Senate Bill 2018 thereafter was passed by both houses of the Legislature, signed by the Governor, and became effective as urgency legislation on September 13, 2000.

This legislative history demonstrates that under newly enacted section 6603(c), in an SVPA proceeding such as the one before us, the district attorney may obtain access to otherwise confidential treatment information concerning an alleged SVP to the extent such information is contained in an updated mental evaluation.

---

trials were pending. [¶ h) 179 inmates have been committed to the SVP program." (Assem. Com. on Public Safety, Analysis of Sen. Bill 2018, mem. prepared for hearing date of June 13, 2000, p. 4.)

[9]That amendment to section 6603(c) deleted language referring to "interviews of the person being evaluated *unless that person declines to be interviewed*," and replaced it with the statute's present language, referring to "interviews of the person being evaluated, *either voluntarily or by court order*." (Italics added.)

[10]The bill continued: "In order to clarify recommitment and placement procedures to avoid the possible inappropriate release of sexually violent predators, it is necessary that this bill take effect immediately." (Sen. Bill 2018, § 6, p. 7.)

## V.

The judgment of the Court of Appeal is vacated and the matter is remanded to that court for further proceedings consistent with this opinion.

Mosk, J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.