Filed 2/13/14  Macy v. Super. Ct. CA6

Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| DANIEL JAMES MACY,<br><br>        Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF<br>SANTA CRUZ COUNTY<br><br>        Respondent,<br><br>THE PEOPLE,<br><br>        Real Party in Interest. | H037138<br>(Santa Cruz County<br>Super. Ct. No. ME-43) |

The central issue in this original writ proceeding is whether the trial court was legally obligated to dismiss the civil commitment proceedings brought against petitioner Daniel James Macy pursuant to the Sexually Violent Predator Act ("SVPA" or "Act") (Welf. & Inst. Code, § 6600 et seq.)[1] because the original, concurring evaluations were conducted under an invalid standardized assessment protocol and presently there is no pair of concurring evaluations.  In our initial opinion, we denied petitioner Macy's writ

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

1

petition without prejudice after concluding that, to obtain pretrial writ relief, an alleged SVP must make an additional showing beyond the mere fact that evaluators conducted their evaluations under an invalid assessment protocol.  The California Supreme Court subsequently granted the petition for review in this case (S204255, Sept. 12, 2012) and held the matter pending resolution of *Reilly v. Superior Court* (S202280).  *Reilly v. Superior Court* (2013) 57 Cal.4th 641 (*Reilly*) determined that "relief arising from use of an invalid protocol in an SVP evaluation should depend on a showing that the error was material."  (*Id*. at p. 655.)  Following *Reilly*, the Supreme Court transferred the matter to us for reconsideration in light of its decision.

We again deny relief.

I

*Legal Background*

A concurring pair of evaluations is a prerequisite to the filing of a petition to commit an individual alleged to be an SVP.  (§ 6601, subds. (d)-(i); see *Reilly v. Superior Court*, *supra*, 57 Cal.4th at p. 647; *People v. Superior Court* (*Ghilotti*) (2002) 27 Cal.4th 888, 909 (*Ghilotti*).)  The purpose of this requirement is to screen out persons unlikely to qualify as SVP's.  (See *People v. Medina* (2009) 171 Cal.App.4th 805, 814; see also *People v. Superior Court* (*Preciado*) (2001) 87 Cal.App.4th 1122, 1130 (*Preciado*).)  Evaluations must be conducted "in accordance with a standardized assessment protocol, developed and updated by the State Department of State Hospitals [formerly State Department of Mental Health], to determine whether the person is a sexually violent predator . . . ."[2]  (§ 6601, subdivision (c); see Stats. 2012, ch. 24, § 139, p. 1030, eff.

---

[2]    Section 6601, subdivision (c), continues to provide:  "The standardized assessment protocol shall require assessment of diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffense among sex offenders.  Risk factors to be considered shall include criminal and psychosexual history, type, degree, and duration of sexual deviance, and severity of mental disorder."  (See Stats. 2012, ch. 24, § 139, p. 1030, eff. June 27, 2012; Stats. 2011, ch. 359, § 2, p. 3769; Stats. 2010, ch.

2

June 27, 2012; Stats. 2011, ch. 359, § 2, p. 3769; Stats. 2010, ch. 710, § 3, p. 4032; Stats. 2008, ch. 601, § 2, p. 3432, eff. Sept. 30; 2008, Prop. 83, § 26, approved Nov. 7, 2006; Stats. 2006, ch. 337, § 54, pp. 2663-2664, eff. Sept. 20, 2006; Stats. 1999, ch. 136, § 1, p. 1832, eff. July 22, 1999.)

Once a petition is filed, the court holds a probable cause hearing to determine whether the matter should be brought to trial. (See § 6602; see also §§ 6601.5, 6604.) "After the petition is filed, rather than demonstrating the existence of the two evaluations, the People are required to show the more essential fact that the alleged SVP is a person likely to engage in sexually violent predatory criminal behavior. [Citation.]" (*Preciado, supra,* 87 Cal.App.4th at p. 1130; see *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 247 ["the only purpose of the probable cause hearing is to test the sufficiency of the evidence supporting the SVPA petition"], 247-250 [probable cause determination encompasses four elements], 254-256 [definition of "likely"].) An SVP petition progresses to trial only if the court finds the requisite probable cause. (§ 6602, subd. (a).)

In 2008, the Office of Administrative Law (OAL) determined that challenged provisions in the "Clinical Evaluator Handbook and Standardized Assessment Protocol (2007)" ("2007 Protocol") issued by the Department of Mental Health ("DMH") met the definition of a regulation as defined by Government Code section 11342 and should have been adopted pursuant to the Administrative Procedures Act (APA) (Gov. Code, § 11340 et seq.). (2008 OAL Determination No. 19.)[3] Accordingly, the 2007 protocol constituted an "underground regulation" (Cal. Code Regs, tit. 1, § 250).[4]

---

710, § 3, p. 4032; Stats. 2008, ch. 601, § 2, p. 3432, eff. Sept. 30, 2008; Prop. 83, § 26, approved Nov. 7, 2006; Stats. 2006, ch. 337, § 54, p. 2664, eff. Sept. 20, 2006; Stats. 1999, ch. 136, § 1, p. 1832, eff. July 22, 1999.)

[3]    We have taken judicial notice of the 2007 Protocol and the 2008 OAL Determination No. 19. (Evid. Code, §§ 452, subd. (c), 459, subd. (a).)

[4]    Section 250, subdivision (a), of the California Code of Regulations, title 1, states: " 'Underground regulation' means any guideline, criterion, bulletin, manual, instruction, order, standard of general application, or other rule, including a rule governing a state

3

"The OAL Determination clarified that its ruling concerned only whether the 2007 assessment protocol constituted a regulation under Government Code section 11342.600 because '[n]othing in this analysis evaluates the advisability or the wisdom of the underlying action or enactment.' (OAL Determination, at p. 1.) The Office of Administrative Law recognized that it 'has neither the legal authority nor the technical expertise to evaluate the underlying policy issues involved.' (*Ibid*.) In other words, its conclusions addressed only the procedural validity of the 2007 assessment protocol; it did not address the protocol's substantive validity." (*Reilly*, *supra*, 57 Cal.4th at p. 649.)

A new, emergency assessment protocol was "adopted in February 2009 in response to the OAL Determination that the 2007 assessment protocol was procedurally invalid." (*Id*. at p. 650.) "The Office of Administrative Law eventually approved this emergency assessment protocol in September 2009 . . . ."[5] (See *Ibid*.)

In *In re Ronje* (2009) 179 Cal.App.4th 509 ("*Ronje*"), which was recently disapproved by the California Supreme Court to the extent that it was inconsistent with the *Reilly* decision (*Reilly*, *supra*, 57 Cal.4th at p. 655), Ronje sought habeas "relief on the ground his evaluations under section 6601 leading to the SVPA commitment petition

agency procedure, that is a regulation as defined in Section 11342.600 of the Government Code, but has not been adopted as a regulation and filed with the Secretary of State pursuant to the APA and is not subject to an express statutory exemption from adoption pursuant to the APA."

[5] Section 4005 of the California Code of Regulations, title 9, now provides: "The evaluator, according to his or her professional judgment, shall apply tests or instruments along with other static and dynamic risk factors when making the assessment. Such tests, instruments and risk factors must have gained professional recognition or acceptance in the field of diagnosing, evaluating or treating sexual offenders and be appropriate to the particular patient and applied on a case-by-case basis. The term 'professional recognition or acceptance' as used in this section means that the test, instrument or risk factor has undergone peer review by a conference, committee or journal of a professional organization in the fields of psychology or psychiatry, including, but not limited to, the American Psychological Association, the American Psychiatric Association, and the Association for the Treatment of Sexual Abusers."

were conducted under a standardized assessment protocol later determined by the [OAL] to constitute an invalid 'underground' regulation under California Code of Regulations, title 1, section 250." (*Id.* at p. 513.) The appellate court in *Ronje* relied in part upon *People v. Pompa–Ortiz* (1980) 27 Cal.3d 519 (*Pompa–Ortiz*), which considered an appellate challenge to the trial court's denial of a Penal Code section 995 motion based on the magistrate's improper closing of the preliminary hearing. (See *Ronje, supra*, 179 Cal.App.4th at p. 513; see also *Cooley v. Superior Court, supra*, 29 Cal.4th at p. 247 [analogizing a section 6602 probable cause hearing to a preliminary hearing in a criminal case].) *Ronje* concluded that the petitioner was "not required to show prejudice from use of the invalid [SVP] assessment protocol because he is making a pretrial challenge." (*Ronje, supra*, 179 Cal.App.4th at p. 513.) Its remedy for the concurring evaluators' use of an invalid protocol in performing their evaluations under section 6601 was to require fresh evaluations using a valid assessment protocol and a new probable cause hearing under section 6602, subdivision (a), based on the new evaluations. (*Id.* at pp. 514, 521.) *Ronje* did not discuss what should happen if the replacement evaluations produced a split of opinion.

In *Pompa-Ortiz*, the Supreme Court stated that it was "settled that denial of a substantial right at the preliminary examination renders the ensuing commitment illegal and entitles a defendant to dismissal of the information on timely motion. [Citations.]" (*Pompa-Ortiz, supra*, 27 Cal.3d at p. 523.) *Pompa–Ortiz* also declared: "Henceforth irregularities in the preliminary examination procedures which are not jurisdictional in the fundamental sense shall be reviewed under the appropriate standard of prejudicial error and shall require reversal only if defendant can show that he was deprived of a fair trial or otherwise suffered prejudice as a result of the error at the preliminary examination. The right to relief without any showing of prejudice will be limited to pretrial challenges of irregularities. At that time, by application for extraordinary writ,

5

the matter can be expeditiously returned to the magistrate for proceedings free of the charged defects."  (*Pompa-Ortiz*, *supra*, 27 Cal.3d at p. 529.)

In *Reilly*, the Supreme Court determined that "the *Ronje* court erred when it ordered replacement evaluations . . . without requiring a determination that the underlying mistake in the assessment protocol amounted to material error."  (*Reilly*, *supra*, 57 Cal.4th at p. 652.)  It also disagreed with Ronje "[t]o the extent that *Ronje* relied on *Pompa–Ortiz* to hold that materiality is always presumed if an assessment protocol error is raised before trial . . . ."  (*Id*. at p. 653.)  *Reilly* stated: "The general rule derived from *Pompa–Ortiz* is that nonjurisdictional irregularities in preliminary hearing procedures should be reviewed for prejudice.  (*Pompa-Ortiz*, *supra*, 27 Cal.3d at p. 529 . . . .)  In *Pompa–Ortiz*, this rule was applied to a postconviction challenge.  But it applies with equal force to a pretrial challenge that addresses an issue that a subsequent fact finder will reconsider."  (*Ibid*.)

*Reilly* also briefly discussed *People v. Konow* (2004) 32 Cal.4th 995 (*Konow*) and *People v. Standish* (2006) 38 Cal.4th 858 (*Standish*).  (*Reilly*, *supra*, 57 Cal.4th at pp. 653-654.)  Those cases considered whether a magistrate had denied a defendant a substantial right affecting the legality of an ensuing commitment.  (See *Standish*, *supra*, 38 Cal. 4th at pp. 882-884 [magistrate refused to grant OR release pending the preliminary examination]; *Konow*, *supra*, 32 Cal.4th at pp. 1024-1025 [magistrate incorrectly believed that the complaint could not be dismissed in furtherance of justice under Penal Code section 1385].)  *Konow* held that "a defendant is denied a substantial right affecting the legality of the commitment when he or she is subjected to prejudicial error, that is, error that reasonably might have affected the outcome [citation]."  (32 Cal.4th at p. 1024.)  *Reilly* found those decisions "support[ed] the conclusion that Reilly, as the petitioner for a writ of mandate who bears the burden of pleading and proof, must demonstrate more than procedural error to obtain dismissal of his SVPA commitment petition."  (*Reilly*, *supra*, 57 Cal.4th at p. 653.)

6

*Reilly* then considered *Ghilotti, supra,* 27 Cal.4th 888. (*Reilly*, *supra*, 57 Cal.4th at pp. 654-655.) *Ghilotti* described the trial court's authority to review the evaluators' initial SVP reports for material legal error when their reports are challenged. (*Ghilotti*, *supra*, 27 Cal.4th at pp. 912-915.) In light of this precedent, the California Supreme Court concluded in *Reilly* that "relief arising from use of an invalid protocol in an SVP evaluation should depend on a showing that the error was material." (*Reilly*, *supra*, 57 Cal.4th at p. 655.)

The Supreme Court made clear that a trial court is not required to dismiss an SVP petition based upon the mere showing that the evaluations pursuant to section 6601, which supported the filing of the petition, were conducted under an invalid assessment protocol. (See *id*. at pp. 646, 652-656.) The court observed: "By requiring that assessment protocol errors must rise to the level of materiality, we ensure that meritorious petitions can proceed, while mandating reevaluation, and possible dismissal, where their merit is in doubt." (*Id*. at p. 655.) It further stated: "Requiring that the error be material also ensures that the Legislature's purpose in enacting section 6600 et seq. is followed. The legislative history shows the Legislature did not intend that courts interpret section 6601's procedural requirements with unnecessary strictness to prevent the trier of fact from ultimately determining each individual's SVP status." (*Id*. at pp. 655-656.)

II

*Procedural Background*

An SVP petition alleging that petitioner Macy qualified for commitment as an SVP was filed in December 2004. It alleged that two evaluators had determined that petitioner had "a diagnosed mental disorder such that he is likely to engage in acts of sexual violence without appropriate treatment and custody within the meaning of Welfare and Institutions Code Section 6600 *et seq.*" and he "poses a danger to the health and safety of others, and is predatory within the meaning of [those provisions]."

7

In June 2005, a probable cause hearing was held. The petition states, and it is not disputed, that "at the conclusion of that hearing, respondent court found probable cause to believe that petitioner was likely to engage in sexually violent predatory criminal behavior upon his release from custody."

In March 2010, petitioner filed a notice of motion to dismiss the SVP petition or, alternatively, to grant a new probable cause hearing.[6] The motion to dismiss was based on the ground that, subsequent to the probable cause hearing, two separate pairs of evaluators had disagreed whether petitioner met the SVP criteria. Petitioner acknowledged that, in a series of updated evaluations following the 2005 probable cause hearing, Drs. Jeremy Coles and John Hupka concurred that petitioner met the SVP criteria. He pointed out, however, that in updated evaluations dated March 2009, the psychologists had a split of opinion regarding whether he currently qualified as an SVP. The subsequent updated evaluations conducted by psychologists Dana Putnam and Nancy Rueschenberg in May 2009 also resulted in a split of opinion. Petitioner maintained that, due to the lack of concurring updated evaluations, the court was required to dismiss the petition pursuant to subdivision (b) of section 6604.1 as amended by Proposition 83 (approved Nov. 7, 2006).[7] Citing *Ronje*, *supra*, 179 Cal.App.4th 509, petitioner

---

[6]    The exhibits submitted in support of the petition do not explain why the matter did not proceed to trial before March 2010. Petitioner does not raise any issues related to delay.

[7]    Section 6604.1 was amended by Proposition 83 in 2006 to refer to an indeterminate term of commitment but it still contained the following statutory language: "The provisions of subdivisions (c) to (i), inclusive, of Section 6601 shall apply to evaluations performed for purposes of extended commitments." (Former § 6604.1 as amended by Prop. 83, § 28, approved Nov. 7, 2006, see former § 6604.1 as amended by Stats. 2000, ch. 420, § 4, p. 3140, eff. Sept. 13, 2000; see also § 6604.1.) Petitioner argued in support of his motion to dismiss that, where a second set of updated evaluations do not concur that a person qualifies as an SVP, the petition had to be dismissed under section 6601, subdivision (f), which precludes the filing of an SVP petition where a second set of evaluators do not concur that the alleged SVP meets the criteria for commitment.

8

alternatively contended that he was entitled to a new probable cause hearing because the 2004 assessment protocol used by the evaluators who testified at the probable cause hearing was an improper "underground" regulation.

In July 2010, petitioner filed a "supplement" to his motion, requesting "two additional evaluations by two new and different evaluators" in addition to a new probable cause hearing if the court did not grant his request to dismiss the SVP petition. Petitioner attached exhibits showing the following developments. In a letter dated March 31, 2010, Dr. Hupka had reversed his opinion, finding that petitioner met the SVP criteria. In an updated evaluation dated May 17, 2010, Dr. Coles had also reversed his opinion, finding petitioner did *not* meet the SVP criteria. In a May 2010 updated evaluation, Dr. Putnam had concluded that petitioner still met the SVP criteria. Petitioner maintained that the double split of opinion between each set of evaluators required dismissal or at least a new probable cause hearing.

In its opposition filed in July 2010, the People argued there was no legal basis for dismissing the petition but acknowledged that *Ronje* required a new probable cause hearing. The People also asserted that updated evaluations had already been prepared by Drs. Coles and Hupka and, therefore, it was unnecessary for the court to order additional evaluations.

In his reply filed July 2010, petitioner pointed out that, although Drs. Coles and Hupka, the two initial evaluators, had originally agreed that he met the SVP criteria, their latest opinions created a reverse split of opinion between them. He emphasized that the two sets of evaluators continued to each have a split of opinion. Petitioner further argued that section 6603, subdivision (c)(1), required, at a minimum, two additional evaluations by "two new and different evaluators" because the most recently updated evaluations of Drs. Coles and Putnam resulted in another split of opinion. Petitioner continued to assert that the probable cause hearing was invalid and he was entitled to a new probable cause hearing based upon new evaluations using a valid protocol.

9

On August 5, 2010, the Santa Cruz County Superior Court granted petitioner's request for a new probable cause hearing but it did not dismiss the SVP petition or order new evaluations.

On March 28, 2011, petitioner filed a second motion to dismiss the SVP petition, emphasizing that no separate pair of evaluators had agreed that he met the SVP criteria following the trial court's order for a new probable cause hearing pursuant to *Ronje*. Updated evaluation reports of Drs. Putnam, Rueschenberg, and Coles were attached as exhibits. Dr. Putnam concluded in a November 2010 report that petitioner met the SVP criteria. Dr. Rueschenberg concluded in a December 2010 report that petitioner did *not* meet that criteria. Dr. Coles also concluded in a December 2010 report that petitioner did *not* meet that criteria. Dr. Hupka had apparently retired.

In this second motion to dismiss, petitioner argued that, since no pair of evaluators agreed that petitioner met the SVP criteria based upon a valid assessment protocol, the court was required to dismiss the petition. He again contended that section 6604.1, subdivision (b), as amended by the adoption of Proposition 83, required the court to dismiss the SVP proceeding because a second set of updated evaluations resulted in split, rather than concurring, opinions.

The People filed opposition in which it was conceded that *Ronje* required a new probable cause hearing but not dismissal of the SVP petition. Petitioner filed a reply in which he asserted that *Gray v. Superior Court* (2002) 95 Cal.App.4th 322 (*Gray*) was no longer good authority in light of section 6604.1, subdivision (b).[8]

---

[8]   *Gray*, cited with approval in *Reilly* (*Reilly*, *supra*, 57 Cal.4th at p. 648), determined: "Section 6603, subdivision (c), merely provides that [if a split in opinion results from an updated or replacement evaluation] the new evaluators shall conduct their evaluations 'in accordance with' section 6601, subdivision (f). It does not, on its face, provide any consequences for a split of opinion between the second set of evaluators. [Fn. omitted.] Accordingly, we are unwilling to imply the drastic requirement of dismissal." (*Gray*, *supra*, 95 Cal.App.4th at p. 328.) The appellate court further stated: "It may be argued that the purpose of the second set of evaluators required by section

On May 31, 2011, the court denied petitioner's second motion to dismiss. It set the matter for a new probable cause hearing on September 12, 2011 based on the updated evaluations.[9]

On July 14, 2011, petitioner filed a petition for writ of mandate in this court seeking to compel the superior court to set aside its May 31, 2011 denial of his motion to dismiss and to enter a new order granting the motion. The petition also requests "such other and further relief as may be appropriate and just."

This court summarily denied the petition. Petitioner filed a petition for review in the Supreme Court. The Supreme Court granted the petition and transferred the matter to this court with "directions to vacate our order denying mandate and to issue an order directing respondent to show cause why the relief sought in the petition should not be granted based on evaluations conducted under the protocol that was adopted by the Department of Mental Health following the decision in *In re Ronje* (2009) 179 Cal.App.4th 509" (S196502). This court complied with the order and issued an order to show cause but we ultimately denied relief.

---

6603, subdivision (c), in the event of a postfiling split of opinion, can only be to resolve the difference of expert opinion, and thereafter to lead to such further action—either continued prosecution or dismissal—as may be mandated by the new evaluations. However, the Legislature certainly knows how to provide for dismissal when it wishes to do so. Section 6602, subdivision (a), which relates to probable cause hearings, clearly requires that '[i]f the judge determines there is not probable cause [to believe that the person is a sexually violent predator], he or she shall dismiss the petition . . . .' Thus, we find it unlikely that the silence in the statutes we are considering reflects a legislative intent for dismissal. In the circumstances, we think it more likely that the required new evaluations are intended for informational and evidentiary purposes." (*Ibid.*)

[9] The record before us does not reflect whether, at this point, a new probable cause hearing has been held based on updated evaluations conducted under a valid assessment protocol.

11

Petitioner again filed a petition for review, which the Supreme Court granted (S204255). After deciding *Reilly*, the Supreme Court transferred the matter to this court for reconsideration in light of *Reilly*.

## III

### *Discussion*

#### A. *Original Evaluations Pursuant to Section 6601*

The People did not dispute below that the original concurring evaluations that led to the filing of an SVP petition were conducted using an invalid assessment protocol and the use of that protocol constituted error.[10] Even assuming this to be true, petitioner has not shown a basis for writ relief. Accordingly, we now find it unnecessary to resolve the People's assertion, advanced in its opposition to the writ petition, that the 2007 protocol did not constitute an underground regulation.

*Reilly* clarified: "[I]f an alleged SVP can demonstrate that a *material* error occurred in the evaluative process, for the purposes of section 6601, both concurring evaluations are invalid and are rendered a legal nullity. New evaluations must therefore replace them, ensuring that an alleged SVP who has proved that material error occurred in the proceedings receives adequate protection under the SVPA. (See *Ghilotti*, *supra*, 27 Cal.4th at pp. 913–914 . . . .)" (*Reilly*, *supra*, 57 Cal.4th at p. 655, italics added.) "Absent material error, 'once a petition has been properly filed and the court has obtained

---

[10]    In *Ronje*, the appellate court stated: "We ordered Ronje to augment the record with the assessment protocol used for his evaluations so we could compare it with the one determined by the OAL to constitute an underground regulation. Ronje responded by augmenting the record with a copy of the 2004 assessment protocol used for his evaluations. The 2004 assessment protocol is substantially the same as the 2007 version determined by the OAL to constitute an invalid regulation. The relevant portions of the 2004 version differ only in a few, nonsubstantive respects from the corresponding portions in the 2007 version that were the basis for 2008 OAL Determination No. 19." (*Ronje*, *supra*, 179 Cal.App.4th at p. 516.)

jurisdiction, the question of whether a person is a sexually violent predator should be left to the trier of fact. . . .' (*Gray*, *supra*, 95 Cal.App.4th at p. 329 . . . .)" (*Id*. at p. 656.)

As to the standard for assessing material error, the Supreme Court further stated: "As noted, *Ghilotti* states that an error is material if 'there appears a reasonable probability, sufficient to undermine confidence in the outcome, that the error affected the evaluator's ultimate conclusion.' (*Ghilotti*, *supra*, 27 Cal.4th at p. 913 . . . .) *Konow* defines material error as 'an error that reasonably might have affected the outcome [citation].' (*Konow*, *supra*, 32 Cal.4th at p. 1024 . . . .) Whether these two formulations differ is an issue we need not decide here, because under either formulation we find that Reilly has failed to demonstrate material error." (*Id*. at p. 656, fn. 4.)

Petitioner Macy has not demonstrated material error has occurred under either standard. "An alleged SVP, as the petitioner for a writ of mandate, is the party who bears the burden of pleading and proving the facts on which he or she bases a claim for relief." (*Id*. at p. 656.) The differences between the 2007 (or 2004) protocol and the 2009 protocol do not in and of themselves compel the conclusion that material error occurred because evaluations pursuant to former section 6601 were conducted under a pre-2009 protocol. As the Supreme Court observed in *Reilly*: "[T]he February 2009 protocol was only six pages long, as compared to the 68-page 2007 protocol. The 2007 protocol gave a step-by-step process for evaluators to follow. The 2009 protocol essentially gives the evaluator more discretion in how to conduct the evaluation, but the evaluator is informed about the requirements of the law, the issue that must be opined on, and the risk factors to consider; these have not changed from the 2007 protocol. (See Cal. Department of Mental Health, Standardized Assessment Protocol for Sexually Violent Predator Evaluations (Feb. 2009) p. 1.)" (*Id*. at p. 655, fn. 3.)

The Supreme Court has provided the following direction going forward: "[I]n future cases in which the alleged SVP has only been evaluated under the 2007 assessment protocol and in which a court finds probable cause that the individual meets the SVP

13

criteria, the individual may petition the court to set aside the probable cause determination on the ground that the use of the invalid 2007 assessment protocol materially affected the outcome of the hearing. The court may then order new evaluations under section 6603 et seq., using the 2009 assessment protocol, and may, in its discretion, order a new probable cause hearing if the new evaluations support the petition." (*Id*. at p. 657, fn. 5.) We assume that this guidance applies equally to evaluators' reliance on the 2004 assessment protocol.

B. *Updated Evaluations Pursuant to Section 6603*

*Reilly* explained: "The SVPA also provides for evaluations to be updated or replaced after a commitment petition has been filed. (§ 6603, subd. (c).) Section 6603, subdivision (c) was enacted to clarify the right of the attorney seeking commitment to obtain up-to-date evaluations, in light of the fact that commitment under the SVPA is based on a 'current mental disorder.' (*Albertson v. Superior Court* (2001) 25 Cal.4th 796, 802 . . . ; see *id*. at pp. 803-804 . . . .)" (*Id*. at p. 647.)

Subdivision (c)(1) provides in pertinent part: "If the attorney petitioning for commitment under this article determines that updated evaluations are necessary in order to properly present the case for commitment, the attorney may request the State Department of State Hospitals [formerly State Department of Mental Health] to perform updated evaluations. If one or more of the original evaluators is no longer available to testify for the petitioner in court proceedings, the attorney petitioning for commitment under this article may request the State Department of State Hospitals [formerly State Department of Mental Health] to perform replacement evaluations. . . . [U]pdated or replacement evaluations shall not be performed except as necessary to update one or more of the original evaluations or to replace the evaluation of an evaluator who is no longer available to testify for the petitioner in court proceedings. . . . If an updated or replacement evaluation results in a split opinion as to whether the person subject to this

14

article meets the criteria for commitment, the State Department of State Hospitals shall conduct two additional evaluations in accordance with subdivision (f) of Section 6601."

*Reilly* stated: "If an updated or replacement evaluation results in a split of opinion as to whether the individual meets the criteria for commitment, the SDSH must obtain two additional evaluations in accordance with subdivision (f) of section 6601. (§ 6603, subd. (c).) However, although initial evaluations conducted under section 6601 must agree, a lack of concurrence between updated or replacement evaluations does not require dismissal of the petition. (*Gray v. Superior Court* (2002) 95 Cal.App.4th 322, 328 . . . (*Gray*).) Rather, the updated evaluations' primary purpose is evidentiary or informational. (*Ibid*.) Mandatory dismissal is not required where one or both of the later evaluators conclude the individual does not meet the criteria for commitment. (*Ibid*.)" (*Reilly*, *supra*, 57 Cal.4th at pp. 647-648.) "[T]he People are entitled to have the trier of fact resolve the conflict in the evidence when there are conflicting professional opinions (i.e., splits of opinion) on an alleged SVP's status. [Citation.]" (*Id*. at p. 655, fn. 2.)

Accordingly, splits of opinion in the updated or replacement evaluations of petitioner that are produced pursuant to section 6603 do not in themselves compel dismissal of the SVP petition filed against petitioner Macy. The statute does not impose any consequence or additional requirement where a second set of updated evaluations performed under section 6603, subdivision (c), results in a division of opinion.

In the absence of any showing of material error, petitioner is not entitled to writ relief.

DISPOSITION

The petition for writ of mandate is denied.

15

_____

ELIA, J.

WE CONCUR:


_____

PREMO, Acting P. J.


_____

MIHARA, J.