# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,

Petitioner,

v.

THE SUPERIOR COURT OF ORANGE COUNTY,

Respondent;

RICHARD ANTHONY SMITH,

Real Party in Interest.

S225562

Fourth Appellate District, Division Three

G050827

Orange County Superior Court

M-9531

December 13, 2018

Justice Cuéllar authored the opinion of the court, in which Chief Justice Cantil-Sakauye and Justices Chin, Corrigan, Liu, Kruger, and Segal[*] concurred.

---

[*]     Associate Justice of the Court of Appeal, Second Appellate District, Division Seven assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

PEOPLE v. SUPERIOR COURT (SMITH)

S225562

Opinion of the Court by Cuéllar, J.

In California, mental health professionals and law enforcement personnel endeavor to identify and treat individuals likely to engage in sexually violent criminal behavior because of a mental disorder. (Welf. & Inst. Code, §§ 6600-6609.3, SVPA or Act; see *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1143.) Although designation as a sexually violent predator (SVP) is not a punitive measure, individuals so designated are subject to a variety of serious consequences, including civil commitment. (§ 6604.)

Whether someone qualifies as an SVP is determined by a judge or jury at a trial. (*Ibid*.) Key to that determination are the opinions of the mental health professionals designated by the State Department of State Hospitals (SDSH) to examine the alleged SVP and to consider, among other things, the factors known to be associated with the risk of reoffending. (§ 6601, subd. (c).) We granted review in this case to decide whether the district attorney prosecuting a civil commitment petition under the SVPA may obtain copies of the treatment records supporting the updated or replacement evaluators' opinions about an individual's suitability for designation as an SVP. We must also resolve whether those records may be shared with a mental health expert retained by the district attorney to assist in the prosecution of the SVP petition.

What we conclude is that a recent amendment to the SVPA, enacted after we granted review, allows the district attorney to obtain those otherwise confidential records. The district attorney may then disclose those records to its retained expert, subject to an appropriate protective order, to assist in the cross-examination of the SDSH evaluators or mental health professionals retained by the defense and, more generally, in prosecuting the SVP petition. We therefore affirm the Court of Appeal.

## I.

### A.

The SVPA defines an SVP as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (Welf. & Inst. Code § 6600, subd. (a)(1); all further undesignated statutory references are to this code.) Once the Department of Corrections and Rehabilitation determines an inmate nearing release from prison may be an SVP, the SDSH designates two psychiatrists or psychologists to examine the person using a standardized assessment protocol. The protocol requires an "assessment of diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffense among sex offenders." (§ 6601, subd. (c).) If the evaluators concur that the person qualifies as an SVP, then the Director of State Hospitals must forward a request that a petition for commitment be filed in the superior court of the county that imposed the sentence the person is currently serving. (*Id*., subds. (d), (i).) The petition is filed by either the

district attorney or the county counsel, whichever has been designated by the county board of supervisors to assume responsibility for SVP proceedings, if the designated counsel concurs with the SDSH determination. (*Id.*, subd. (i).) In this instance, the proceedings are being handled by the district attorney, so we will refer to the designated counsel as the district attorney throughout.

Because resolution of the SVP petition often stretches over months or years, the district attorney may request that SDSH evaluators perform an updated evaluation of the alleged SVP. (§ 6603, subd. (c)(1); see *Albertson v. Superior Court* (2001) 25 Cal.4th 796, 805, fn. 7 (*Albertson*).) If the original evaluator is no longer available to testify, the district attorney may also request that the SDSH appoint someone to perform a replacement evaluation. (§ 6603, subd. (c)(1).)

The SVPA provides that following the initial evaluation, "[c]opies of the evaluation reports and any other supporting documents shall be made available" to the district attorney. (§ 6601, subd. (d).) Thereafter, copies of any updated or replacement evaluations shall likewise be provided to the district attorney (§ 6603, subd. (c)(1)), along with "all records" reviewed by "the evaluator performing an updated evaluation," if requested. (*Id.*, subd. (j)(1).)

The statute also includes protections for alleged SVPs. An alleged SVP is "entitled to a trial by jury, to the assistance of counsel, to the right to retain experts or professional persons to perform an examination on his or her behalf, and to have access to all relevant medical and psychological records and reports." (§ 6603, subd. (a).) Civil commitment is authorized under the SVPA only if the trier of fact determines beyond a reasonable

doubt that the person in question is an SVP. (§ 6604.) A person found to be an SVP "shall be committed for an indeterminate term to the custody of the [SDSH] for appropriate treatment and confinement in a secure facility . . . ." (*Ibid.*) While the person is confined, the SDSH must conduct an examination at least once a year to determine whether the person currently meets the definition of an SVP and whether conditional release to a less restrictive alternative or an unconditional discharge is appropriate. (§ 6604.9, subds. (a), (b).)

B.

In March 2002, the Orange County District Attorney filed a petition to commit Richard Anthony Smith, then a prison inmate with a parole date later that month, as an SVP. Attached to the petition were evaluations by mental health professionals Dana Putnam, Ph.D., and Charles Jackson, Ph.D., conducted earlier that year. After a long series of continuances stipulated to or requested by Smith or his attorney, the district attorney in 2006 requested that the SDSH perform updated and replacement evaluations under section 6603, subdivision (c)(1). After another series of stipulated continuances, the trial court granted Smith's request for a new set of updated evaluations. In February 2011, Nancy Rueschenberg, Ph.D., and Dr. Putnam evaluated Smith, and each concluded that he no longer qualified as an SVP. Based on the updated evaluations, Smith filed a motion to enter a plea in abatement and dismiss the petition, which the trial court denied. The Court of Appeal, though, granted Smith's writ petition in an unpublished opinion and directed the trial court to enter a new order dismissing the SVP petition. This court subsequently granted review, holding the matter pending our decision in *Reilly v. Superior Court* (2013) 57 Cal.4th 641, and thereafter transferred the matter back to

4

the Court of Appeal for reconsideration. The Court of Appeal subsequently denied the writ petition insofar as it sought entry of a plea in abatement and dismissal of the SVP petition.

In 2014, the district attorney requested yet another updated evaluation from Dr. Putnam. The district attorney also asked the court for an order permitting his retained expert, Dawn Starr, Ph.D., to review the SDSH evaluations as well as the documentation and records on which the evaluators had relied. The trial court denied the request, but the Court of Appeal directed the trial court to vacate its prior order and enter a new order granting the request.

What the appellate court observed at the outset is that the documents on which the experts relied were already in the lawful possession of the district attorney, citing sections 6601, subdivision (h) and 6603, subdivision (c)(1). The court then weighed Smith's privacy interest against the government's interest in protecting the public from SVPs (as well as the judicial system's interest in providing accurate information to the trier of fact who is making the SVP determination). Its assessment led the court to conclude that "the district attorney's retained expert should be able to review Smith's section 6603(c)(1) evaluations and the mental health records and documents relied upon by the evaluators and Smith's retained experts," with an appropriate protective order.

We granted Smith's petition for review to decide whether the district attorney is entitled to review the confidential medical and psychological records on which the evaluators had relied, and, if so, whether those records may be shared with an expert who has been retained by the district attorney for the purpose of assisting with the SVP proceeding.

II.

We begin by resolving whether the alleged SVP's mental health records may be provided to the district attorney. Generally, such records are confidential. (§ 5328, subd. (a).) But certain exceptions apply.

One such exception applies when the mental health professionals designated by the Director of State Hospitals evaluate an individual and agree that the individual qualifies as an SVP. When this occurs, "[c]opies of the evaluation reports *and any other supporting documents* shall be made available to the attorney designated by the county . . . who may file a petition for commitment." (§ 6601, subds. (d), (h)(1), italics added.) Shortly after the Legislature amended the SVPA in 2000, allowing the district attorney to request updated or replacement evaluations, we concluded that the statutory scheme granted the district attorney "access to treatment record information" insofar as that information was contained in an updated or replacement evaluation. (*Albertson*, *supra*, 25 Cal.4th at p. 805; see also *People v. Gonzales* (2013) 56 Cal.4th 353, 380, fn. 11.)

The appellate courts split following our decision in *Albertson*. The crux of their disagreement was whether the records subject to discovery were limited to the specific excerpts contained in an updated or replacement evaluation, or whether the district attorney could instead be " 'granted direct access to the records' " themselves. (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 507 (2015-2016 Reg. Sess.) as amended July 2, 2015, p. 4; see *id.* at p. 8 [" 'In the last few years, Los Angeles courts have denied requests for subpoenas for state hospital records when requested by the People. A review of California counties revealed that courts in every other

California county surveyed grant the People access to these records' "].)

The Legislature addressed the conflict after we granted review in this case. It added subdivision (j) to section 6603 "to ensure that the prosecuting attorney has access to all the records on which the evaluators have based their evaluations." (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 507, *supra*, as amended July 2, 2015, p. 7.) The statute now provides: "Notwithstanding any other law, the evaluator performing an updated evaluation shall include with the evaluation a statement listing all records reviewed by the evaluator pursuant to subdivision (c). The court shall issue a subpoena, upon the request of either party, for a certified copy of these records. *The records shall be provided to the attorney petitioning for commitment* and the counsel for the person subject to this article. The attorneys may use the records in proceedings under this article and shall not disclose them for any other purpose." (§ 6603, subd. (j)(1), italics added.)

We are unpersuaded by Smith's efforts to evade the amended statute. He argues first that the amended statute cannot apply to the records supporting his 2011 evaluations, which predated the amendment to section 6603. Because section 6603, subdivision (j)(1) "does not apply retroactively," it entitles the district attorney (in Smith's view) only to "information and records obtained in the course of providing services performed on or after January 1, 2016," the amendment's effective date. Yet Smith cites nothing to support his contention that application of the expanded discovery rule to the current SVP proceeding would qualify as "retroactive." And, in general, the law is otherwise: "[C]hanges to rules governing *pending litigation*, for example, frequently have been designated

7

as prospective, because they affect the future; that is, the future proceedings in a trial." (*Quarry v. Doe I* (2012) 53 Cal.4th 945, 956.)

At the core of Smith's "retroactivity" argument appears to be a belief that his pre-2016 communications with mental health professionals were completely confidential. Smith contends that it would be unfair to change the rules after he had already participated in treatment. Although a measure of confidentiality in this context may be valuable, it is not clear why Smith assumed his conversations with these professionals would necessarily remain forever confidential. Before section 6603 was amended, appellate courts were divided on the question whether the attorney prosecuting an SVP petition could obtain the records underlying an updated or replacement evaluation. Even if Smith had relied on the line of cases barring a prosecuting attorney from subpoenaing the underlying records, he would have had reason to know that the prosecuting attorney could nonetheless obtain that same information insofar as those communications or other information were set forth in an updated or replacement evaluation. (See *Albertson, supra,* 25 Cal.4th at p. 805.) Accordingly, Smith had no assurance that any individual communication in connection with his treatment would be protected from disclosure to the prosecuting attorney — even before section 6603 was amended.

Indeed, we applied newly amended provisions governing discovery to a pending SVP proceeding involving closely analogous circumstances in *Albertson.* The issue presented there was whether the SVPA authorized an updated mental health evaluation and the disclosure of the confidential treatment records underlying such an evaluation. (*Albertson, supra,* 25 Cal.4th at p. 798.) After we granted review, the

Legislature enacted urgency legislation authorizing updated and replacement evaluations as well as disclosure of the alleged SVP's treatment records in certain circumstances. (*Ibid.*) We held that the amended statute could and did apply "to any future pretrial and/or trial proceedings in this litigation." (*Id.* at p. 804.) The same is true here. Even though the treatment records might have been created before section 6603 was amended, the statute now allows copies of those records to be disclosed to the district attorney to the extent they were reviewed as part of an updated or replacement evaluation. (§ 6603, subd. (j)(1).)

Smith argues next for a narrow reading of section 6603, subdivision (j)(1). In his view, the statute should be read to authorize access only to the records reviewed by an evaluator performing an *updated* evaluation, not to those records reviewed by an evaluator performing a *replacement* evaluation.[1] Smith correctly points out that section 6603's new subdivision (j)(1) refers only to "the evaluator performing an updated evaluation" and does not mention replacement evaluations — and that subdivision (c)(1), by contrast, refers distinctly to "updated evaluations" and "replacement evaluations." He infers from this that the Legislature reasonably expected the district attorney would have access to the underlying treatment records only when there has been an *updated* — not a *replacement* — evaluation.

True: Courts often presume that a word used in more than one provision of a statute has precisely the same meaning

---

[1]    In this proceeding, Dr. Putnam evaluated Smith in 2002 in connection with the SVP petition and provided an updated evaluation in 2011. Due to Dr. Jackson's unavailability, Dr. Rueschenberg provided a replacement evaluation in 2011.

throughout — a logical inference rooted not only in how people ordinarily use language, but also in how one generally might expect legislative bodies to draft statutory provisions. (*People v. Hernandez* (1981) 30 Cal.3d 463, 468.) Yet this is merely a *presumption,* not an inflexible rule. (*People v. Jones* (1988) 46 Cal.3d 585, 595.) Just as people sometimes use the same word to convey different meanings even in the same sentence, so too have we held that certain statutes are sometimes best read in context to assign different meanings to the same word used in different portions of a statute. (See, e.g., *Jones*, at pp. 594-595 [assigning different meanings for the word "crimes" in Pen. Code § 667.6, subds. (c) and (d)].) Our interpretive task is not necessarily to slavishly assign a word precisely the same meaning every time it is used in a statute — regardless of the context — but to accord it the meaning best suited to effectuating the statute's intended purpose. (*Hernandez*, at p. 468.) When we take account of the relevant provisions and structure of the law, and the SVPA's broad purpose of identifying dangerous sex offenders so that they may receive treatment, we conclude that the best understanding of "an updated evaluation" within the meaning of section 6603, subdivision (j)(1) encompasses all evaluations that update previous SDSH evaluations.

Consider, for instance, the similar roles of updated and replacement evaluations. A replacement evaluation, like an updated evaluation, is triggered by the district attorney's request. (§ 6603, subd. (c)(1).) In both instances, the SDSH performs the evaluations and forwards them to the petitioning attorney and the attorney for the alleged SVP. (*Ibid.*) Both types of evaluations are required to include a review of the same medical and psychological records. (*Ibid.*) Neither a

replacement nor an updated evaluation may be ordered "except as necessary to update one or more of the original evaluations or to replace the evaluation of an evaluator who is no longer available to testify for the petitioner in court proceedings." (*Ibid*.) In short, both types of evaluations originate in similar circumstances, are governed by the same rules, and serve similar purposes — to present the trier of fact with the most up-to-date assessment of the alleged SVP's mental condition. In this sense, *both* types of evaluations serve to update the information provided in earlier evaluations.

The legislative history also supports the conclusion that the term "updated evaluation" in subdivision (j)(1) of section 6603 encompasses both types of the evaluations authorized by subdivision (c)(1). Bill analyses repeatedly described the amendment as providing that "the prosecutor and the attorney for an alleged SVP shall have access to records considered by an expert who performed *replacement or updated* evaluations . . . ." (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 507 (2015-2016 Reg. Sess.) as amended July 2, 2015, p. 1, italics added; see Assem. Com. on Public Safety, Analysis of Sen. Bill No. 507, *supra*, as amended July 2, 2015, p. 7 ["This bill seeks to ensure that the prosecuting attorney has access to *all* the records on which the evaluators have based their evaluations" (italics added)]; Sen. Rules Com., Office of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 507 (2015-2016 Reg. Sess.) as amended June 2, 2015, p. 1 ["the prosecutor or county attorney petitioning for commitment . . . shall have access to records considered by the expert evaluators who performed *replacement or updated* evaluations" (italics added)]; see generally Judicial Council of Cal., Summary of Court-Related Legislation (Nov. 2015) p. 10 [Sen. Bill No. 507

provides that "the prosecutor and the attorney for an alleged SVP shall have access to the records that were reviewed by the expert who performed *replacement or updated* evaluations" (italics added)].) Accordingly, the best reading of the phrase "the evaluator performing an updated evaluation" in section 6603, subdivision (j)(1) is that it includes both the evaluators who are updating their own prior evaluations as well as the evaluators who are updating evaluations performed by a prior evaluator who is no longer available.

Finally, we reject Smith's contention that granting the district attorney access to his treatment records would violate his right to equal protection of the law under the state and federal Constitutions. Smith contends that the amended SVPA gives the district attorney access "to the confidential therapy records of alleged SVPs, but not to the confidential therapy records of any other recipient of those services, including similarly situated mentally disordered offenders (MDOs) and mentally disordered sex offenders (MDSOs)" — yet "the government has not shown why only SVPs should lose the right to keep their treatment records confidential from prosecutors." Smith does not identify in what way, if any, the statutory schemes associated with designation as either an MDO or MDSO operate differently from the SVPA with respect to discovery of these types of records. His submission thus fails to satisfy "the required threshold" for an equal protection claim — i.e., "a credible showing of different treatment." (*United States v. Armstrong* (1996) 517 U.S. 456, 470.) Whether the particular dangers posed by SVPs relative to those posed by MDOs or MDSOs warrant differential treatment is not an issue we need to address here.

III.

Smith argues next that even if the district attorney may lawfully access the relevant treatment records, section 5328 bars the government from sharing those records with its retained expert.  We disagree.

Under new subdivision (j)(1) of section 6603, attorneys for either side "may use the records in proceedings under this article and shall not disclose them for any other purpose."  So long as attorneys do not disclose the confidential records for any *other* purpose, subdivision (j)(1) at the very least suggests that attorneys *may* disclose them "in proceedings under this article." (§ 6603, subd. (j)(1).)  Given the "critical" importance of expert testimony in an SVP proceeding (*People v. McKee* (2010) 47 Cal.4th 1172, 1192) — and the likelihood that counsel will need expert assistance to grasp the scientific nuances underlying another expert's opinion — the disclosure most needed by each party "in proceedings under this article" (§ 6603, subd. (j)(1)) would almost certainly be to its retained expert.

Yet this recently enacted statutory change contains its own share of nuances.  We must read the text of section 6603, subdivision (j)(1) in conjunction with the rest of Senate Bill No. 507, including its uncodified section.  Somewhat cryptically, this uncodified section provides:  "Nothing in this act is intended to affect the determination by the Supreme Court of California, in People v. Superior Court (Smith) (Docket No. S225562), whether an expert retained by the district attorney in a proceeding under the Sexually Violent Predator Act (Article 4 (commencing with Section 6600) of Chapter 2 of Part 2 of Division 6 of the Welfare and Institutions Code) is entitled to review otherwise confidential treatment information under Section 5328 of the

Welfare and Institutions Code." (Stats. 2015, ch. 576, § 2.) The Legislature's explicit reference to this case in the uncodified section evinces an awareness that we had already granted review to consider these issues. (See Assem. Com. on Public Safety, Analysis of Sen. Bill No. 507, *supra*, as amended July 2, 2015, p. 10.) What it does not imply is that we should ignore the legislative changes underlying section 6603, subdivision (j)(1) in resolving them.

Before we granted review, an earlier version of the bill included a paragraph in subdivision (j) providing that "[t]his subdivision does not create any new rights or limitations regarding the retention of an expert witness by either party or access to records by an expert retained or sought to be retained by either party. The attorney petitioning for commitment shall not provide access to the records obtained under paragraph (1) to any third party, including an expert retained or sought to be retained by that attorney, without the consent of the court upon noticed motion." (Sen. Bill No. 507 (2015-2016 Reg. Sess.) as amended Apr. 30, 2015, § 1; see Sen. Rules Com., Office of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 507, *supra*, as amended June 2, 2015, p. 1 ["This bill . . . prohibits the prosecutor from disclosing the records to a retained expert"].) This paragraph was deleted in a subsequent amendment, after we granted review in this case. We are left to garner what insight we can about the Legislature's purpose in crafting the uncodified section above.

We have been unable to find another instance in which a statute included a provision declaring an intent *not* to influence the pending judicial resolution of the issue presented. Even so, nothing in the uncodified section or elsewhere in the statute conveys a categorical bar on considering subdivision (j)(1) of

section 6603 in resolving the matter before us. We can further observe that the Legislature adopted two different strategies to address the two separate issues presented in this case.

On the question of making treatment records available to the district attorney, the Legislature addressed the issue directly. It provided a straightforward answer through an explicit legislative provision governing these records. In contrast, the Legislature refrained from providing a direct answer to the question whether the district attorney's retained expert could review those records. Yet the Legislature did not include an explicit provision rendering the amendment entirely irrelevant to the latter question. Nor does it seem likely, given how the amendment was drafted and what we know about its history, that the Legislature wanted us to completely ignore the 2015 amendments to section 6603 — that is, to pretend that the district attorney might *not* have access to these otherwise confidential records and therefore could not possibly share information that it did not possess. So we shall instead construe the uncodified section's declaration of intent as cautioning us that while section 6603, subdivision (j)(1) may be relevant to the question whether the government can share these records with its retained expert, it cannot alone be dispositive of the issue before us.

We therefore broaden our analysis to encompass the text, structure, and purpose of the entire SVPA as well as section 5328, which makes confidential the information and records obtained in the course of providing services to an alleged SVP. The purpose of the SVPA is to identify, confine, and treat those persons who have mental disorders that render them "a danger to the health and safety of others in that they are likely to engage in acts of sexual violence." (Stats. 1995, ch. 763, § 1,

p. 5921; see *People v. Yartz* (2005) 37 Cal.4th 529, 540.)  The primary mechanism for identifying an SVP is assessment of the person by psychiatrists or psychologists using a standardized protocol.  (§ 6601, subds. (c), (d).)  Although the SVP determination requires proof that the person has been convicted of a sexually violent offense, the bulk of the evidence at trial typically focuses on whether the person has a diagnosed mental disorder that makes it likely he or she will engage in sexually violent behavior.  (See § 6600, subd. (a).)  Accordingly, the civil commitment trial usually turns on the quality and credibility of the expert witnesses and the extent to which their evaluations are persuasive.  (See *People v. McKee*, *supra*, 47 Cal.4th at p. 1192; see generally *People v. Murtishaw* (1981) 29 Cal.3d 733, 772 ["expert prediction, unreliable though it may be, is often the only evidence available to assist the trier of fact"]; *Ake v. Oklahoma* (1985) 470 U.S. 68, 81 (*Ake*) ["psychiatrists disagree widely and frequently on what constitutes mental illness, on the appropriate diagnosis to be attached to given behavior and symptoms, on cure and treatment, and on likelihood of future dangerousness"].)

Unfortunately, as the legislative history suggests, the SDSH " 'has not ensured that it conducts these evaluations in a consistent manner' " and sometimes " 'evaluators did not demonstrate that they considered all relevant information.' " (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 507 (2015-2016 Reg. Sess.) as amended Apr. 30, 2015, p. 3, quoting Cal. State Auditor, Cal. Dept. of State Hospitals Report No. 2014-125 (Mar. 2015) p. 1.)  A key way in which one party counters an opposing expert's opinion is to uncover and challenge the expert about the bases for his or her opinion.  (See *People v. Smith* (2007) 40 Cal.4th 483, 509; *People v. Visciotti* (1992) 2 Cal.4th 1,

81.)  This is particularly true for a mental health professional's assessment of whether an individual qualifies as an SVP. Because an evaluator exercises professional judgment within the legal framework specified by the SVPA, the evaluator's "legally accurate understanding of the statutory criteria is crucial to the Act's proper operation." (*People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 910.)

Cross-examination may assist the trier of fact in determining whether the evaluator has "accurately understood the statutory criteria." (*Ibid.*)  But that opportunity would be a hollow one if the district attorney does not have the assistance of an expert to interpret and explain the significance of the specialized information at issue.  (See *Bonds v. Roy* (1999) 20 Cal.4th 140, 146-147; accord, *Addington v. Texas* (1979) 441 U.S. 418, 429 ["Whether the individual is mentally ill and dangerous to either himself or others and is in need of confined therapy turns on the *meaning* of the facts which must be interpreted by expert psychiatrists and psychologists"].)  Without an expert's assistance in preparing the cross-examination of adverse witnesses, "the risk of an inaccurate resolution . . . is extremely high." (See *Ake, supra*, 470 U.S. at p. 82.)  An expert would also need to examine the relevant records to offer an opinion about the potential SVP's mental health.  (See *People v. Burroughs* (2016) 6 Cal.App.5th 378, 402.)

So it is not surprising to find that nothing in the text of the SVPA bars the government from sharing otherwise confidential information in its possession with the expert it has retained for the purpose of assisting in an SVP proceeding.  Nor would sharing such information with an expert retained to assist in the SVP proceeding violate in particular section 6603, subdivision (j)(1), which states in pertinent part, "The attorneys

may use the records in proceedings under this article and shall not disclose them for any other purpose."

Finally, we reject Smith's argument that access must be limited to avoid a conflict with section 5328. Smith argues that a conflict with this section arises if the government's retained expert is granted access to the treatment records already reviewed by the SDSH evaluators or by his own retained experts. Section 5328 itself lists 25 separate exceptions, including an exception for disclosure "[t]o the courts, as necessary to the administration of justice." (§ 5328, subd. (a)(6).) Following section 5328 are more than a dozen separate statutes, each allowing disclosure in various circumstances. (See § 5328.01 et seq.) In addition, section 6603 specifies still more exceptions to the confidentiality of these records, including the disclosure of the records used by the SDSH evaluators to the attorney prosecuting the SVP petition. (See § 6603, subd. (j)(1).) Nothing in section 5328 appears to contemplate limiting one member of the prosecution team in an SVP proceeding from sharing these otherwise confidential records with another member of the prosecution team, provided an appropriate protective order is in place. (Cf. *People v. Garcia* (2017) 2 Cal.5th 792, 811 [the effectiveness of the sex offender management program "depends on ' "open and ongoing communication" ' among the professionals involved in ' "supervising, assessing, evaluating, treating, supporting, and monitoring sex offenders" ' "].) That team includes paralegals, secretaries, and retained experts. Confidential information that is shared among that group for the purpose of furthering the representation remains confidential. (See Evid. Code, § 952.)

In light of the legislative goals embodied in the SVPA, the role of confidentiality in this context is to "encourage[] persons

with mental problems to seek, accept and undergo treatment and to be open and candid in treatment." (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 948.) It seems implausible that a person would be dissuaded from initiating or participating fully in treatment simply because his or her treatment records, in addition to being disclosed to the SDSH mental health professionals and the district attorney, might be disclosed to a mental health professional retained by the district attorney.

### IV.

Our society uses trials to advance the search for truth. That search generally work best when each side — and each side's experts — have access to the records and information on which the opposing side's experts rely. The Legislature adopted this reciprocal model in the current version of the SVPA. The judgment of the Court of Appeal is affirmed.

**CUÉLLAR, J.**


**We Concur:**
**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**SEGAL, J.**[*]

---

[*]    Associate Justice of the Court of Appeal, Second Appellate District, Division Seven assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Superior Court (Smith)

_____

**Unpublished Opinion** NP opn. filed 2/24/15 – 4th Dist., Div. 3
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S225562
**Date Filed:** December 13, 2018

_____

**Court:** Superior
**County:** Orange
**Judge:** Kimberly Menninger

_____

**Counsel:**

Tony Rackauckas, District Attorney, and Elizabeth Molfetta, Deputy District Attorney, for Petitioner.

No appearance for Respondent.

Frank Ospino, Public Defender, Sharon Petrosino, Chief Deputy Public Defender, Dan Cook and Mark S. Brown, Assistant Public Defenders, for Real Party in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Elizabeth Molfetta
Deputy District Attorney
401 Civic Center Drive W
Santa Ana, CA  92701
(714) 834-3600

Mark S. Brown
Assistant Public Defender
14 Civic Center Plaza
Santa Ana, CA  92701-4029
(714) 834-2144