Filed 8/8/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NICHOLAS NEEDHAM,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>    Respondent;<br><br>THE PEOPLE,<br><br>    Real Party in Interest. | G060670<br><br>(Super. Ct. No. M-16870)<br><br>O P I N I O N |

        Petition for a writ of mandate/prohibition to challenge an order of the Superior Court of Orange County, Elizabeth G. Macias, Judge.  Petition granted.

        Martin Schwarz, Public Defender, and Elizabeth Khan, Deputy Public Defender, for Petitioner.

        Todd Spitzer, District Attorney, and Yvette Patko, Deputy District Attorney, for Real Party in Interest.

                    *         *         *

The People filed a petition against Nicholas Needham seeking to commit him under the Sexually Violent Predator Act (Welf. & Inst. Code, § 6600 et seq.[1]) (SVPA), which authorizes the involuntary civil commitment and treatment of sexually violent predators (SVP) at the conclusion of their prison term. Preparing for trial on the petition, the district attorney retained a psychological expert to evaluate Needham and testify at trial that he qualifies as an SVP. Needham moved to exclude the expert's testimony at trial, but the trial court denied his motion.

Needham asks this court for a writ of mandate/prohibition declaring that the SVPA does not permit the People to call a privately retained expert to testify at trial. We grant his petition.

The SVPA represents an extraordinary deprivation of a person's liberty: it enables the state to indefinitely detain a person, not for a crime actually committed, but for a crime that may be committed in the future. To be sure, the clear and present danger posed by sexually violent predators warrants such a scheme. But given the obvious dangers to essential liberty interests inherent in the SVPA, it must be carefully implemented and applied only where there is a high degree of certainty that it is warranted. Balancing these competing interests, the Legislature has prescribed a detailed process that centers around multiple evaluations by *independent* experts—as many as eight of them. The statutory scheme deliberately limits when an SVP petition may be filed and brought to trial, as well as the evidence available to the prosecution. In light of this system, we conclude that the expert-witness provisions of the Civil Discovery Act do not apply and that the People have no right to retain an expert witness to testify at trial.

---

[1] All further undesignated statutory references are to this code.

**STATUTORY OVERVIEW**

Before discussing the proceedings below or the merits of Needham's petition, we begin with the overall context and structure of the SVPA. The purpose of the SVPA is to confine and treat a limited group of convicted sex offenders who, if released, represent a danger to the health and safety of others in that they are likely to engage in acts of sexual violence. (*People v. Superior Court* (*Ghilotti*) (2002) 27 Cal.4th 888, 919.)

The SVPA sets forth a multistage procedure for pursuing the involuntary commitment of a potential SVP. (See § 6600 et seq.; *Reilly v. Superior Court* (2013) 57 Cal.4th 641, 646-647 (*Reilly*); *Moore v. Superior Court* (2010) 50 Cal.4th 802, 815 (*Moore*).) As set forth below, that procedure includes an initial screening process of potential SVP's, a full evaluation of targeted individuals by multiple mental health professionals, the filing of the petition in cases deemed appropriate, a probable cause hearing, additional evaluations as needed, and finally, a jury trial.

1.    *Initial Screening and Full Evaluation*

First, if the Secretary of the Department of Corrections and Rehabilitation determines an inmate might qualify as an SVP, the inmate is referred for an initial screening based on his or her social, criminal, and institutional history and whether he or she committed a sexually violent predatory offense. (§ 6601, subds. (a)(1) & (b).) If, as a result of that screening, it is determined that the inmate is likely an SVP, the inmate is referred to the State Department of State Hospitals (DSH) for a full evaluation. (*Id.*, subd. (b).)

The evaluation is conducted by two mental health professionals, either psychologists or psychiatrists, designated by the Director of the DSH (the Director). (§ 6601, subd. (d).) Each mental health professional must evaluate the inmate in accordance with a standardized assessment protocol to determine whether the inmate is an SVP—that is, someone "who has been convicted of a sexually violent offense against

3

one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1); 6601, subds. (c) & (d).)

If the two evaluators agree the inmate has a diagnosed mental disorder and is likely to engage in acts of sexual violence without appropriate treatment and custody, the Director forwards a request to the county that imposed the inmate's sentence to file a petition for commitment in superior court. (§ 6601, subd. (d), (h)(1).)

If, however, the two evaluators disagree on whether the inmate qualifies as an SVP, the Director facilitates further examination of the inmate by two "independent professionals" who are not state employees and who have at least five years of experience diagnosing and treating mental disorders. (§ 6601, subds. (e), (g).) A petition for commitment may only be filed if both of those independent professionals agree the inmate meets the criteria for commitment. (*Id.*, subd. (f).)

2. *The Petition and Probable Cause Hearing*

If the county's designated counsel (in this case, the district attorney) concurs with the Director's recommendation to file a petition for commitment, counsel then files such a petition in superior court. (§ 6601, subd. (i).) The superior court must then determine "whether the petition states or contains sufficient facts that, if true, would constitute probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6601.5.) If the court determines the petition on its face supports a finding of probable cause, it orders the inmate to be kept in a secure facility until a probable cause hearing is conducted. (*Ibid.*)

Within the next 10 days (§ 6601.5), the trial court is directed to hold a hearing to determine whether there is probable cause to believe the inmate is likely to engage in sexually violent predatory criminal behavior upon his or her release. (*Ibid.*;

4

§ 6602, subd. (a).) If the judge finds there is not probable cause, the commitment petition is dismissed. (*Ibid*.) If the judge finds there is probable cause, the matter is set for trial. (*Ibid*.)

3. *Additional Evaluations*

Resolution of the SVP petition often stretches over months or years. (See *People v. Superior Court* (*Smith*) (2018) 6 Cal.5th 457, 462 (*Smith*).) Commitment under the SVPA must nonetheless be based on a "'*current*' mental disorder." (*Reilly, supra,* 57 Cal.4th at p. 647, italics added.) Thus, if the district attorney determines updated evaluations are necessary to properly present the case for commitment, he or she may ask the DSH to perform updated evaluations. (§ 6603, subd. (d)(1).) Additionally, if either of the original evaluators is no longer available to testify, the district attorney may ask the DSH to appoint a different expert to perform a replacement evaluation. (*Ibid.*)

If an updated or replacement evaluation results in a split of opinion as to whether the inmate meets the criteria for commitment, the petition need not be dismissed, as the new evaluations are intended primarily for evidentiary and informational purposes. (*Reilly, supra,* 57 Cal.4th at p. 648; *Gray v. Superior Court* (2002) 95 Cal.App.4th 322, 328 (*Gray*).) However, in the event of a split of opinion, the DSH must obtain two additional evaluations by independent professionals. (§ 6603, subd. (d)(1); see § 6601, subd. (e), (f).)

Those additional evaluations are not binding; if one or both of the independent professionals conclude the inmate does not meet the SVPA's criteria for commitment, the district attorney may nevertheless elect to proceed to trial. (*Gray, supra,* 95 Cal.App.4th at p. 329.) "[O]nce a petition has been properly filed and the court has obtained jurisdiction, the question of whether a person is a sexually violent predator should be left to the trier of fact *unless* the prosecuting attorney is satisfied that

5

proceedings should be abandoned." (*Ibid*.) "[I]t is not the number of opinions that matters, but their persuasiveness." (*Ibid*.)

        4.    *Trial*

At trial on a commitment petition under the SVPA, the People must prove three elements beyond a reasonable doubt: (1) the defendant has suffered a conviction of at least one qualifying "sexually violent offense"; (2) the defendant has "a diagnosed mental disorder that makes the person a danger to the health and safety of others"; and (3) the mental disorder makes it likely the defendant will engage in future predatory acts of sexually violent criminal behavior if released from custody. (§§ 6600, 6604.)

SVPA trials are special proceedings of a civil nature and are not punitive in purpose or effect. (*Moore, supra*, 50 Cal.4th at p. 815.) Although, generally speaking, the Civil Discovery Act applies to such proceedings (*People v. Angulo* (2005) 129 Cal.App.4th 1349, 1368), in light of the unique nature of such proceedings it "must be applied in each SVPA proceeding on a case-by-case basis." (*People v. Superior Court (Cheek)* (2001) 94 Cal.App.4th 980, 994.) Further distinguishing itself from a standard civil trial, the SVPA "contains a number of procedural safeguards commonly associated with criminal trials, including the alleged SVP's right to a jury trial (§ 6603, subd. (a)), to assistance of counsel (*ibid*.), and to a unanimous jury finding that he or she is an SVP beyond a reasonable doubt before he or she may be committed (§ 6604)." (*Reilly, supra*, 57 Cal.4th at p. 648.) A defendant in an SVPA proceeding is also entitled to certain due process protections because civil commitment involves a significant restraint on liberty. (*Moore, supra,* 50 Cal.4th at p. 818.)

"The bulk of the evidence at trial [in an SVPA commitment proceeding] typically focuses on whether the person has a diagnosed mental disorder that makes it likely he or she will engage in sexually violent behavior. [Citation.] Accordingly, the civil commitment trial usually turns on the quality and credibility of the expert witnesses

6

and the extent to which their evaluations are persuasive." (*Smith*, *supra,* 6 Cal.5th at pp. 470-471.)

If the jury or court finds the defendant is an SVP, the defendant is committed for an indeterminate term to the custody of the DSH. (§ 6604.) Following commitment, the SVP is subject to annual mental examinations to determine whether he or she continues to meet the definition of an SVP. (§ 6604.9.) The SVP may also file a petition for unconditional discharge. (See § 6605.)

## FACTS

This brings us to the present case. In 2016, two DSH evaluators, Dr. Coles and Dr. Musacco, evaluated Needham and opined he qualified as an SVP. Based on their evaluations, in November 2016, the district attorney filed a petition to commit Needham as an SVP.

In January 2018, Dr. Coles changed his opinion and found Needham no longer met the legal criteria to be an SVP. Since the two DSH evaluators now disagreed regarding Needham's status as an SVP, two additional independent evaluators were asked to evaluate Needham—Dr. Korpi and Dr. Yanofsky. Dr. Korpi opined Needham did not meet the criteria for commitment; Dr. Yanofsky opined he did.

All four evaluators testified at Needham's probable cause hearing. The trial court found there was probable cause to believe Needham was likely to engage in sexually violent predatory criminal behavior upon his release. After the probable cause hearing, however, Dr. Yanofsky changed his opinion and found Needham no longer met the criteria of an SVP.

Rather than obtaining an updated or replacement evaluation from the DSH independent experts, in July 2019, the People informed the trial court they had privately retained Dr. King as an expert witness and requested a protective order so the People could provide Dr. King with Needham's confidential records. At the People's request

7

and over Needham's objection, the court issued a protective order allowing the People to provide Needham's records to Dr. King and allowing Dr. King to interview Needham at the jail.

Between July 2019 and June 2021, Needham filed three motions to exclude Dr. King from testifying as an expert witness at trial, asserting the SVPA does not permit the People to privately retain an expert witness to testify at trial. The trial court denied Needham's motions in July 2021, finding the People may privately retain their own expert in SVPA commitment proceedings which would including testifying at trial.

In September 2021, several months before the trial date, Needham filed the instant petition for writ of mandate/prohibition, asking this court to order that Dr. King may neither perform a supplemental evaluation of Needham nor testify at trial. The petition posed the issue for review as follows: "When multiple doctors, who were chosen by the [DSH] under the [SVPA] including the doctors who have performed the most recent evaluations, have examined Defendant and opined he is not a [SVP], can the People privately retain evaluators to perform a non-DSH SVP supplemental 'evaluation' and testify at trial to their opinion that Defendant is an SVP despite never being sanctioned by the DSH to do so?"

This court initially denied Needham's petition. Needham then filed a petition for review in the California Supreme Court, which granted the petition and transferred the matter back to this court. The Supreme Court directed us to vacate our previous order denying mandate and to issue an order directing the trial court to show why the requested relief should not be granted. We now reach the merits of Needham's petition.

8

**DISCUSSION**

Needham contends the SVPA does not permit a district attorney to retain a mental health expert to testify at trial. He contends the SVPA only allows a district attorney to use the DSH evaluators appointed under section 6601 and 6603 to testify at trial, not privately retained experts. In light of the detailed statutory scheme for the provision and testimony of independent experts in an SVPA proceeding, we agree.

The SVPA's statutory scheme focuses on independent experts. Once the Secretary of the Department of Corrections and Rehabilitation determines that an SVP petition may be necessary, no petition may be filed until two independent experts agree that the defendant is a sexually violent predator. (§ 6601, subd. (d).) In conducting that assessment, the experts must evaluate the person in accordance with a standardized assessment protocol developed by the DSH. (§ 6601, subd. (c).) That protocol, which comprises 10 pages of singled-spaced text, is very detailed in how the independent experts are to conduct their evaluations.[2]

If the two independent experts do not agree, the DSH must arrange for a further examination by two more independent experts. (§ 6601, subd. (e).) Those experts cannot be employees of the state, must have at least five years' experience in treating mental disorders, and must be either a psychologist or psychiatrist. (§ 6601, subd. (g).) A petition may not be filed unless both of those experts agree that the person qualifies as a sexually violent predator. (§ 6601, subd. (f).)

Once a petition is filed, the SVPA expressly addresses the retaining of experts: it says the *defendant* may hire an expert to participate in the trial. (§ 6603, subd. (a).) There is no similar provision for the prosecutor. This provision invokes the "principle, commonly known under the Latin name of *expressio unius est exclusio*

---

[2] The protocol is available at https://www.dsh.ca.gov/Publications/docs/Regulations/2019_01_17/protocoltext.pdf (accessed August 2, 2022).

*alterius, . . .* that the expression of one thing in a statute ordinarily implies the exclusion of other things." (*In re J.W.* (2002) 29 Cal.4th 200, 209.) Although this principle does not apply invariably (*Ibid.*), here it supports a common sense reading of the statute. If the Legislature envisioned *both* parties retaining testifying experts, why only say defendant? The clear inference is that this is a one-sided right.

Two further provisions reinforce this reading. First, the very next subdivision says, "The attorney petitioning for commitment under this article has the right to demand that the trial be before a jury." (§ 6603, subd. (b).) Thus, immediately after specifying what the defendant's rights at trial are, the statute addresses the People's rights at trial and makes no mention at all of retaining an expert. Second, at a much later stage of the proceeding, in the context of a petition by the defendant for conditional release from custody, the SVPA provides that the "[t]he [district] attorney . . . shall represent the state and may have the committed person evaluated by *experts chosen by the state*." (§ 6608, subd. (g), italics added.) The fact that the Legislature expressly authorized the People to retain an expert at a later stage of the proceeding demonstrates that the omission of that right earlier in the proceeding was intentional.

But that is not all. Returning to the initial trial, the SVPA expressly addresses what the prosecutor is to do if the prosecutor deems the original expert reports inadequate: "request the [DSH] to perform updated evaluations." (§ 6603, subd. (d)(1).) If one of the original evaluators is not available, the People may request "replacement evaluations," "[h]owever, updated or replacement evaluations *shall not be performed* except as necessary to update one or more of the original evaluations or to replace the evaluation of an evaluator who is no longer available to testify for the petitioner in court proceedings. These updated or replacement evaluations shall include review of available medical and psychological records, including treatment records, consultation with current treating clinicians, and interviews of the person being evaluated, either voluntarily or by court order. If an updated or replacement evaluation results in a split opinion as to

10

whether the person subject to this article meets the criteria for commitment, the State Department of State Hospitals shall conduct two additional evaluations in accordance with subdivision (f) of Section 6601." (*Ibid.*, italics added.) The language "shall not be performed" is mandatory language that prohibits any replacement evaluations except on the terms specified in the statute. (*Ibid.*) If the People could retain their own expert at that stage, they would essentially be providing a replacement evaluation free of the restrictions the Legislature imposed in subdivision (d)(1).

Yet two more provisions support the proposition that the People are not entitled to retain their own experts to testify at trial.

First, section 6603, subdivision (e), states, "This section does not prevent *the defense* from presenting otherwise relevant and admissible evidence." (Italics added.) There is no similar provision for the state's case. Under the principle of *expression unius est exclusio alterius*, this provision undermines the dissent's rationale. The dissent's rationale is, essentially, the SVPA does not prohibit the state from retaining experts, and thus anything otherwise available in the Civil Discovery Act is permitted. But the statute expressly addresses that very rationale and applies it only to a defendant. This strongly suggests that the People, by contrast, are confined to the evidence that the SVPA carefully designates.

Finally, section 6603, subdivision (k)(3), provides, "This subdivision does not affect any right of a party to seek to obtain other records regarding the person subject to this article." Two aspects of this are noteworthy. First, the Legislature applies this provision to "a party," meaning either party, which demonstrates that its prior delegations specifically to the defendant were intentional. Second, the provision entitles either party to "obtain other records," not to retain other witnesses.

The Legislature, therefore, has carefully circumscribed the options available to the People in retaining experts for trial. And it was generous in the possibilities: by this point in the proceeding, as many as *eight* independent experts may

11

have weighed in (the two original experts, two more if they disagreed, two more for updated/replacement reports, and two more if the updated reports disagree). Importantly, all eight of those experts are independent experts.

Taken as a whole, the above provisions evince a carefully calibrated and limited procedure to ensure that an extraordinary deprivation of liberty has as many safeguards as possible. Virtually the entire scheme revolves around the *independent* experts who evaluate the defendant and testify concerning defendant's mental state. It would largely undermine those safeguards if the People could bypass them by presenting testimony from their own retained expert who had to do no more than satisfy the basic expert witness requirements of the Civil Discovery Act. To permit the People to retain a testifying expert would create the possibility that an expert with a clear bias—an expert hired to support the People's view, rather than provide an independent analysis—could lead to the deprivation of a person's liberty even where some independent experts find it unwarranted, or for reasons independent experts find unconvincing. That result is inconsistent with the design of the SVPA procedure.

Beyond the statutory scheme, case law has not directly addressed the issue before us, though the dissent contends *Smith, supra,* 6 Cal.5th 457 provides it some support. Although the dissent acknowledges that *Smith* did not directly address the issue before us, the dissent contends the entire *Smith* opinion would become "mere dictum" if the Supreme Court did not at least implicitly agree that a district attorney may privately retain experts. We disagree.

In *Smith* the issue was whether the People could share the mental health records of a defendant with a *consulting* expert, subject to an appropriate protective order. The court concluded the People may do so. The court's rationale was that a district attorney will need the assistance of an expert to understand and effectively cross-examine a hostile expert witness: "Cross-examination may assist the trier of fact in determining whether the evaluator has 'accurately understood the statutory criteria.'

12

[Citation.]  But that opportunity would be a hollow one if the district attorney does not have the assistance of an expert to interpret and explain the significance of the specialized information at issue." (*Smith, supra,* 6 Cal.5th at p. 471.)  "Without an expert's assistance in preparing the cross-examination of adverse witnesses, 'the risk of an inaccurate resolution . . . is extremely high.'" (*Ibid.*)  "So it is not surprising to find that nothing in the text of the SVPA bars the government from sharing otherwise confidential information in its possession with the expert it has retained *for the purpose of assisting in an SVP proceeding*." (*Id.* at p. 472 (italics added).)

Amidst the court's heavy focus on the need for the People to retain an expert to assist in trial preparation, we acknowledge the *Smith* opinion contains a single line that could be interpreted to support the dissent.  The court stated, "An expert would also need to examine the relevant records to offer an opinion about the potential SVP's mental health." (*Smith, supra,* 6 Cal.5th at pp. 471-472.)  In context, we do not interpret this single line as an endorsement of the notion that the People may call a privately retained *testifying* expert.  Instead, we view this simply as an acknowledgement that, in order to properly assist a prosecutor in preparing for trial, a retained expert would need sufficient information to form an opinion of his or her own.  Indeed, if the *Smith* court had envisioned the People calling a *testifying* expert, the court's rationale should have been that the expert needs to see the reports in order to testify.  But the court never said that; in fact, it seems to have studiously avoided saying that.

In the absence of any clear guidance from our high court, and given the detailed and carefully calibrated scheme of independent experts set forth in the SVPA, we hold that the People may not call a privately retained expert witness to testify at trial.

13

## DISPOSITION

The petition for a writ of mandate is granted.  Let a peremptory writ of mandate issue directing the Superior Court of Orange County to vacate its ruling denying Needham's motions to exclude the testimony of the People's expert witness, and instead to issue a new order excluding the testimony of the People's privately retained expert witness.


MARKS, J.*

I CONCUR:


O'LEARY, P. J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14

GOETHALS, J., dissenting:

I dissent. Although I believe the legal question presented here is a close one, and I am sympathetic with many of the concerns expressed by my colleagues (e.g., "[t]he SVPA represents an extraordinary deprivation of a person's liberty"), I disagree with the majority's conclusion that the Sexually Violent Predator Act (Welf. & Inst. Code, § 6600 et seq.) (SVPA), which authorizes the involuntary civil commitment and treatment of sexually violent predators (SVP) at the conclusion of their prison term, prevents the People from calling an expert privately retained by them to testify at trial.

The SVPA specifically provides that a defendant in a commitment proceeding may "retain experts or professional persons to perform an examination on the person's behalf." (Welf. & Inst. Code, § 6603, subd. (a).) It says nothing about the People's right to do so.

Several courts, however, including this one, seem to have assumed that such a right exists. In *People v. Landau* (2013) 214 Cal.App.4th 1, 25-26 (*Landau*), for example, we found the trial court did not abuse its discretion when it permitted an expert retained by the prosecution to conduct a pretrial evaluation of the defendant. That expert later testified at trial.

It is also well settled that, since SVPA proceedings are civil in nature (*People v. Roa* (2017) 11 Cal.App.5th 428, 443), the Civil Discovery Act of 1986 (Code Civ. Proc., § 2016.010 et seq.) (CDA) applies to them. (See, e.g., *Landau, supra*, 214 Cal.App.4th at p. 25; *Bagration v. Superior Court* (2003) 110 Cal.App.4th 1677, 1686; *People v. Superior Court* (*Cheek*) (2001) 94 Cal.App.4th 980, 983, 988.) Since the CDA permits parties to retain and designate expert trial witnesses (Code Civ. Proc., §§ 2034.210-2034.250, 2034.270, 2034.290), it follows logically and legally that both sides in an SVPA action have such a right. No published opinion has held to the contrary.

1

I agree with the majority that "case law has not directly addressed the issue before us." But not long ago the Supreme Court came close in *People v. Superior Court* (*Smith*) (2018) 6 Cal.5th 457 (*Smith*). In *Smith*, after reviewing the history of the SVPA, the Supreme Court ruled that the People could share the defendant's mental health records with a mental health expert retained by them as a pretrial consultant. (*Id.* at p. 462.) The court then added that "[a]n expert would also need to examine the relevant records to offer an opinion about the potential SVP's mental health." (*Id.* at pp. 471-472.) To me the court's implication seems clear: a testifying expert may also access such records.

My colleagues acknowledge this language before dismissing its importance. "In context, we do not interpret this single line as an endorsement of the notion that the People may call a privately retained *testifying* expert." On this issue we may agree to disagree. But if their position is well taken, much of the *Smith* opinion becomes mere dictum.

My colleagues advocate for "a common sense reading of the statue." So do I. In *Smith*, the Supreme Court discussed at some length the realities of an SVP trial: "The primary mechanism for identifying an SVP is assessment of the person by psychiatrists or psychologists using a standardized protocol." (*Smith, supra*, 6 Cal.5th at p. 470.) "Accordingly, the civil commitment trial usually turns on the quality and credibility of the expert witnesses and the extent to which their evaluations are persuasive." "A key way in which one party counters an opposing expert's opinion is to uncover and challenge the expert about the bases for his or her opinion. [Citations.] This is particularly true for a mental health professional's assessment of whether an individual qualifies as an SVP." "Cross-examination may assist the trier of fact in determining whether the evaluator has 'accurately understood the statutory criteria.'" (*Id.* at p. 471.)

2

Today, many civil trials evolve into battles of expert witnesses. The designation and use of such experts are controlled by the CDA. The parties have the opportunity to challenge pretrial the admissibility of their opponent's proposed expert testimony via motions filed pursuant to Evidence Code sections 402 and 405. If the testimony is admitted, the experts are subjected to the crucible of cross-examination. And then the trier of fact decides who to believe. I am not convinced that proceeding in this well-established manner threatens the fairness of future SVP proceedings.

I would affirm.


GOETHALS, J.